SHIELDS *v.* EARLY.

[95 South. 839. No. 23217.]

1. DAMAGES. *Essence of "penalty" and "liquidated damages" defined; whether stipulation in contract penalty or liquidated damages to be determined from circumstances at time of execution; deposit for breach made in part performance of contract regarded as stipulated damages.*

Whether a contract provides for a penalty for its breach or liquidated damages is often a question of much difficulty. The law inclines toward interpreting such a stipulation as a penalty. The essence of a penalty is a stipulation as *in terrorem* while the essence of liquidated damages is a genuine covenanted pre-estimate of such damages. Whether the sum stipulated is a penalty or liquidated damages is a question of construction to be decided from the terms and inherent circumstances of the particular contract judged as of the time of its execution and not as of the time of its breach. If the cash payment or deposit is made in part performance of the contract, it will generally be regarded as liquidated damagees, if not excessive. provided the actual damages are uncertain or difficult of computation.

2. DAMAGES. *Stipulation in land contract on breach thereof held for liquidated damages.*

Where two hundred and fifty dollars was paid in cash by the vendee to the vendor on the execution of a contract between them for the sale and purchase of land as a part payment on the purchase money thereof, and said contract provided: "It is agreed and understood that the two hundred and fifty dollars cash payment, above referred to, is to be considered a part of the pur-

chase price of the said land, and deducted therefrom provided the party of the second part shall carry out the provisions of this contract, otherwise it shall be, considered as liquidated damages accruing to the party of the first part," held, that the two hundred and fifty dollars referred to in said stipulation was not a penalty, but liquidated damages, and on a breach of said contract by the vendee the vendor was barred from recovering any further sum on account of said breach.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Suit by Mrs. Ollie Shields against W. R. Early. From a judgment dismissing the suit, plaintiff appeals. Affirmed.

*Everett & Forman,* for appellant.

It will be noted that the contract in question here is not an option to purchase, but is a contract for the sale of the land on the part of the appellant, and for the purchase of the land on the part of the appellee; therefore, one of sale and purchase and not one of an option to purchase.

"A contract for the purchase of land which recites that the vendor has received a certain sum on account of the purchase money, and which then sets forth the terms of the sale which are to be complied with, is one of bargain and sale and not an option." James on Option Contracts, 108; *Hamberger* v. *Thomas,* 118 S. W. 770; *Benson* v. *Shotwell,* 87 Cal. 49.

If this contract is a contract of sale and purchase, then surely the demurrer should have been overruled. After the defendant had come into possession of the property and while in possession, to allow him to repudiate his contract would be to give the vendee power by his default to terminate the agreement to purchase without liability to the vendor. James on Option Contracts, section 109, page 21; *Mason* v. *Caldwell,* 10 Ill. 196, 48 Am. Dec. 330; *Westervelt* v. *Huiscamp,* 101 Ia. 196; *Hamberger* v. *Thomas,* 119 S. W. 770; *Wright* v. *Suydam,* 72

Wash. 587, 131 Pac. 239; *Abel* v. *Gill,* 95 Neb. 279; *Hendrick* v. *Firke,* 169 Mich. 549.

Again the demurrer should have been overruled, because the failure of the vendor to convey at the time appointed in the contract or the failure of the vendee to pay the purchase price stipulated in the contract, does not enable either party to avoid the contract without the consent of the other. *Beatty* v. *Harkey,* 2 S. & M. 563; *Green* v. *Finucane,* 5 Howard, 460, 468; *Anderson* v. *Lincoln,* 5 Howard, 279; *Fletcher* v. *Wilson,* S. & M. Ch. 376; *Gale* v. *Green,* — S. W. 159, 12 Am. Dec. 548; *Kent* v. *Stephens,* 90 So. 241; *McLaren* v. *Parker,* 24 Miss. 509.

"A contract for the sale of land on deferred payments by the terms of which, time is made an essential ingredient, and which provides that, on default in payment, the contract shall be void and all payments made shall be forfeited, does not leave performance optional with the purchaser; but on default, the vendor may elect to insist upon the forfeiture or to waive it and enforce the contract, and the failure of the vendee to pay a purchase money note does not, of itself, terminate such contract and release him from liability upon said note." *Westerveld* v. *Huiskamp,* 101 Ia. 196.

We now turn to the fifth ground of demurrer, which is to the effect that the cash payment of two hundred and fifty dollars was by the terms of the contract considered liquidated damages, and should the contract be breached, there would be no further liability on the part of the defendant. This seems to be the ground relied upon by the appellee in the argument of the demurrer in the court below, and the ground on which the lower court sustained the demurrer. In all contracts for the sale of land, for the erection of buildings and generally in contracts for the performance of some act, is provided a penalty of some kind. It is immaterial as a general rule whether the contract stipulates for a "penalty" or "liquidated damages," and in support of this statement, I refer the court to the following authorities: 8 R. C. L. 564, par. 114;

*Hensy* v. *Metger,* 152 Ill. 505; *Bilz* v. *Powell,* 50 Colo. 482, 38 L. R. A. (N. S.) 847; *Scofield* v. *Tompkins,* 95 Ill. 190, 34 A. R. 160; *Foley* v. *McKegan,* 4 Ia. 1, 66 Am. Dec. 107; *Condon* v. *Kempter,* 47 Kan. 126, 13 L. R. A. 671; *Mason* v. *Calendar,* 2 Minn. 350, 72 Am. Dec. 102; *Mammoth Park* v. *Wallace Iron Works,* 55 N. J. L. 132, 39 Am. St. 626; *Wilhelm* v. *Eaves,* 21 Ore. 194, 14 L. R. A. 297; *Currery* v. *Larer,* 7 Pa. St. 470, 49 Am. Dec. 298; *Crawford* v. *Heatwole,* 110 Va. 358, 34 L. R. A. (N. S.) 587; *Modler* v. *Silvertone,* 55 Wash. 159, 35 L. R. A. (N. S.) 1st; *Wilkes* v. *Bierden,* 68 W. Va. 82, 31 L. R. A. (N. S.) 837; *Jaquith* v. *Wadsworth,* 125 L. R. A. 607.

It is the tendency and preference to regard a sum in a contract as a penalty and not as liquidated damages, for by so doing, the sum can be apportioned to the actual damages sustained for the breach of the contract. 13 Cyc., page 95; *Bright* v. *Roland,* 3 Howard (Miss.) 398; *Coker* v. *Brevard,* 90 Miss. 64, 43 So. 178; *Condon* v. *Kempter,* 47 Kan. 126, 13 L. R. A. 671; *Peggra* v. *Wheeler,* 24 Ore. 532, 21 L. R. A. 726.

We call the court's attention to the case of *Headrick* v. *Firke,* 169 Mich. 549. A case very similar to the one at bar except stronger in favor of the defendant than the one now under consideration. We also call the court's special attention to the case of *Strode* v. *Smith,* 66 Ore. 164. Therefore, we sumbit that the fifth ground of the demurrer was not well taken and the court erred in so holding.

Where, in an action to recover damages retained for delay in completing a building under a clause of the contract providing for liquidated damages, the evidence puts in issue the intention of the parties in using such clause, the question of the parties' intention is for the jury and not for the determination of the court." *Kelly & Mahon* v. *Fejervay,* 111 Ia. 693.

Again we say that a demurrer will not lie in contracts of the character involved here, because in addition to ascertaining the intention of the parties you must ascertain

the measure of damages, because if the damages stipu-
lated for be out of proportion to the damages sustained,
it is necessary to ascertain the damages by proof. *Tripp*
v. *Bishop,* 56 Pa. St. 427; *Headrick* v. *Kirke,* 168 Mich.
149; *Garrard* v. *Dollar,* 67 Am. Dec. 271.

Therefore, we submit that the demurrer should be over-
ruled and this cause should be reversed.

*Chapman & Johnson,* for appellee.

We shall discuss only the fourth ground of the de-
murrer; the other grounds have been fully and clearly
argued by our associate, Hon. J. Holmes Baker. From
his argument it is manifest that the demurrer should have
been sustained. The fourth ground of the demurrer which
is also decisive of the case, is as follows: "A cash payment
of two hundred and fifty dollars was made, which it was
agreed between the parties to said contract should be con-
sidered as, and was, liquidated damages to accrue to the
plaintiff, should the said contract be breached by the de-
fendant, and there is, and could be, no further liability on
the part of the said defendant."

The contract filed as Exhibit "A" to the declaration re-
cites that for and in consideration of the sum of two hun-
dred and fifty dollars to the party of the first part this
day paid, the receipt whereof is hereby acknowledged, the
party of the first part agrees to sell and convey by war-
ranty deed to the party of the second part, certain land in
Sunflower county, Mississippi, described in the contract;
how the said sum of two hundred and fifty dollars is to
be applied and used is provided for in the paragraph of
the contract quoted below: "It is agreed and understood
that the two hundred fifty dollars cash payment, above
referred to, is to be considered a part of the purchase price
of the said land, and deducted therefrom, provided the
party of the second part shall carry out the provisions of
this contract, otherwise, it shall be considered as liqui-
dated damages accruing to the party of the first part."

The contract filed as an exhibit to the declaration is a part thereof and is to be so considered for all purposes. See 735 Miss. Code 1906 (Hemingway's Code, sec. 518); *McCormick* v. *Attmeave,* 73 Miss. 86, 19 So. 198; *Georgia Home Ins. Co.* v. *Holmes,* 75 Miss. 390, 23 So. 183.

Whether damages are liquidated or whether the amount stipulated is to be considered a penalty, is a question of law for the court. 11 Elliott on Contracts, pp. 848 and 849, sec. 1559; 8 R. C. L., pp. 559 and 560, sec. 110; *Mosler Safe Co.* v. *Maiden Lane Safe Dep. Co.* (N. Y.), 93 N. E. 81, 37 L. R. A. (N. S.) 363; *Curry* v. *Larer* (Pa.), 49 Am. Dec. 486; *Smith* v. *Newell* (Fla.), 20 So. 249, 251; *Jones* v. *Miss. Farms Co.,* 116 Miss. 295, 306, 76 So. 880; 11 Elliott on Contracts, pp. 847 and 848.

Having laid down these premises, we shall now proceed to discuss whether by the contract the damages for the breach thereof were liquidated. We are not unmindful of the fact that the form of words is not controlling, and that although the contract may denominate the damages as liquidated, yet such language may be construed to impose a penalty, and a provision for a penalty may be construed to require the payment of liquidated damages. We shall not advert to the distinction between liquidated damages and a penalty.

"Liquidated damages are those the amount of which has been determined by an anticipatory agreement between the parties. Where the amount is reasonable and not disproportionate to the injury provided against the injured party will not be allowed to recover more than the sum fixed and he will be regarded as having been injured to the extent of the amount stipulated, especially where the damages are incapable of exact computation. If the amount fixed is greatly disproportionate or unconscionable, it will be construed a penalty and not liquidated damages, and hence, not recoverable for compensation is the basic rule of the law of damages. 'A stipulation on the subject of damages differs from a penalty in this,' says one authority, 'that the parties are holden by it; whereas, a penalty is

regarded as a forfeiture, from which the defaulting party can be relieved.' " 3 Elliott on Contracts, p. 319, sec. 2125.

"As a general rule the parties to a contract may stipulate in advance as to the amount which shall be paid in compensation for loss or injury which may result in the event of a breach of the agreement, at least in those cases where the damages which would result are not fixed by law, and where the amount stipulated does not manifestly exceed the injury which will be suffered."

The damages so fixed are termed liquidated or stipulated, the distinction between a penalty and liquidated damages being that one is a surety for, and the other is to be paid in the event of nonperformance of, the act to be done.

The purpose in permitting a stipulation for damages as compensation is to render certain and definite that which appears to be uncertain and not easily susceptible of proof." 8 R. C. L., 559, sec. 110.

Damages in the following cases are always susceptible of being construed as penalties: 1st: An agreement to pay a larger sum of money on default in payment of a smaller sum, or to pay, in addition to the debt owing, a fixed sum. 2nd: An agreement to pay a sum on the breach of a contract containing various and diverse covenants, damages for the breach of some of which are certain and of some uncertain. 3rd: An executory agreement to pay a certain sum of money on the breach of a contract, where such sum is unconscionable or disproportionate to the damages actually sustained. 4th: Where a deposit is made on entering into a contract, not in part performance thereof.

An examination and analysis of the authorities make apparent that in any of the above instances damages, whether they be called liquidated or a penalty, may always be construed as penalties; but it is equally clear that where a sum is paid in part performance of a contract and is to be forfeited as liquidated damages upon the failure of one of the parties to complete it, such sum is considered liquidated damages; the cases distinguishing between

a penalty and liquidated damages do not apply to a deposit of money, which is in fact a part payment of the purchase money. In discussing contracts involving money deposits, the rule is stated in 8 R. C. L., p. 576, sec. 125. *Jones* v. *Miss. Farms Co.*, 116 Miss. 295, 298, 305, 306; *Wilson* v. *Baltimore* (Md.), 34 Atl. 774; 34 L. R. A. (New Series), Note p. 7, 8; 34 L. R. A. (New Series), p. 9 Note; *K. P. Mining Co.* v. *Tony Jacobson* (Utah), 4 L. R. A. (N. S.) 755, 8 Am. & Eng. Enc. Law (2 Ed.), p. 636; 1 Sutherland, Damages (3 Ed.), 279; *Hennessy* v. *Metser*, 152 Ill. 505, 43 Am. St. Rep. 267, 38 N. E. 1058; *Jackson* v. *Hunt*, 76 Vt. 284, 56 Atl. 1010. This doctrine is so well settled that we deem a further discussion and citation of authorities unnecessary.

The case at bar falls squarely within, and unequivocably meets the requirements of, the rule for the stipulation or liquidation of damages in anticipation of a breach of a contract. A sum certain was paid in part performance of the contract and was to be forfeited as liquidated damages upon failure of the party to complete it; there was no agreement to pay a larger sum of money on default in payment of a smaller amount; the contract did not contain various and diverse covenants, damages for the breach of some of which were certain and some uncertain; this was not a deposit made on entering into a contract, not in part performance of it, but collateral to it to secure or guarantee its performance, but it was a sum paid in part performance of the contract; this was not an executory agreement to pay a certain sum of money on the breach of a contract, but as just stated, a sum certain was paid in part performance of the contract; in other words, in part payment of the purchase money, which sum would be forfeited by the party paying it, should he make default in performance. The contract is a contract for the sale of land, the damages for the breach of which are always considered uncertain and may always be stipulated. In *Willson* v. *Mayor, etc. of Baltimore* (Md.), 34 Atl. 774; *Hendrick et ux.* v. *Firke* (Mich.), 135 N. W. 319; *Nelson et al.* v. *Butler* (Tex.), 190 S. W. 811.

We feel confident that no sound decision can be found holding that, in a contract for the sale of land where a sum of money is paid on the execution of the contract in part payment of the purchase money, which it is agreed shall be forfeited upon the failure of the vendee to carry out the contract, and shall be considered as liquidated damages accruing to the vendor, such agreement is not enforceable as an agreement liquidating the damages sustained by reason of a breach of the contract.

None of the decisions referred to by appellant are in conflict with the views hereinabove expressed. The case of *Garrard* v. *Dollar,* 67 Am. Dec. 271, and many of the other cases cited by the appellant, do not have under consideration the question of liquidated damages or penalties; the case of *Garrard* v. *Dollar,* discusses the measure of damages for the breach of a contract for the sale of land where the contract itself does not undertake to fix the amount of damage, and it may be said, by way of parenthesis, that the rule there laid down is not the rule adopted in many jurisdictions; 27 R. C. L., p. 619, sec. 373; but we are not concerned now with what is the measure of damages for a breach of a contract for the purchase of land, but with the question, under what circumstances the parties to a contract are permitted to fix in advance the damages, and whether the contract in this case comes within that class, and the parties to that contract did measure and liquidate their damages thereby. The cases of *Mason* v. *Caldwell* (Ill.), 48 Am. Dec. 330, and *Beaty* v. *Tarkey,* 2 S. and M. 563, and the other cases cited by counsel involving the same principle as is involved in those two cases have no reference to the question of liquidated damages; the principle in those cases is distinct and easily differentiated from the principle controlling the instant case. In those cases the courts were construing the meaning of contracts containing a provision that on failure to perform certain agreements the contract should become null and void; of course a purchaser cannot by failing to perform an obligation relieve himself from fur-

ther liability; the option is with the vendor, whether the contract will be terminated or enforced; the question of whether by agreement the damages have been anticipated does not enter into any of those decisions and under no theory can they throw any light on the present case; the principle involved in that line of decisions is fully discussed in *Kent et al.* v. *Stevenson,* 127 Miss. 529, 90 So. 241. A purchaser cannot by failing to pay an instalment of the purchase money, thereby rescind the contract and relieve himself from liability for the remaining instalments, though there be a provision in the contract declaring it at an end on the purchaser's default; but he may by an express provision stipulate that a certain sum, or the instalments theretofore paid, shall be the damages for his failure to perform, and such a provision will be given effect.

Neither the case of *Coker* v. *Brevard,* 90 Miss. 64, 43 So. 178, nor of *Bright* v. *Rowland,* 3 How. 398, is in point here. We respectfully submit that for the reasons set forth in the able brief of our learned associate, as well as for the reasons hereinabove given, the case should be affirmed.

*J. Holmes Baker,* for appellee.

The declaration does not state that any one of those conditions precedent had been performed by the plaintiff at the time of the alleged breach by the defendant. Nor does it allege facts in excuse for non-performance. "When a specific act is to be done by the plaintiff or any number of acts, by way of conditions precedent, he must show in the pleading precisely what he has done by way of performing them. 4 Encyc. Pl. & Prac. 632, Ib 628, citing *Fultz* v. *House,* 6 S. & M. (Miss.) 404; *Fultz* v.*House,* 6 S. & M. 404; 1 Chitty, Pl. 427; 4 Ency. Pl. & Prac. 633.

The agreement as to the possession of the land cannot be construed as in anywise relieving the vendor from her obligations under the contract, nor could such possession

in any way impose new or additional obligations upon
Early to those mentioned in the contract; and certainly
the possession of the land by Early pending the consum-
mation of the land sale did not give Early any greater
benefits or advantages under the contract than he had
before.   Neither did it deprive Mrs. Shields, the vendor,
of any of her rights or advantages under the contract.

The fact is that this possession alleged to have been
given to Early by "mutual agreement" some days after
the execution of the contract had no effect one way or the
other upon the rights, duties and obligations of the re-
spective parties in carrying out the terms and conditions
of the proposed sale.   In support of their argument with
regard to the knowledge of Early that Mrs. Shields ex-
pected to sell the land to him for the purpose of paying
the Tonkel debt and also the fact that Early was placed
in possession of the land after the execution of the con-
tract, counsel have cited many cases but an examination
of these cases will show that the principles there announced
are not applicable to this case.   *Beatty* v. *Harkey,* 2 S.
& M. 563.

That is our contention in this case, that the default on
the part of Mrs. Shields to make the title as stipulated in
the contract, conferred upon Early the right to refuse
payment and to rescind the contract.   Because Early knew
there were encumbrances upon the land which he agreed
to purchase from appellant, it is argued that he was bound
to accept the deed to the land without those encumbrances
being first removed.   This argument is made in the face
of the plain provisions of the contract, which clearly neg-
atives any such construction.   In attempting to sustain
this position they cite in their brief the case of *Coleman*
v. *Rose,* 5 How. 468; *Green* v. *Finucane,* 5 How. 542, and
*Anderson* v. *Lincoln,* 5 How. 597, and other cases.

In the case at bar there was to be no independent pay-
ments by Early; on the other hand he was to make no pay-
ment until the encumbrances and liens upon the land were
satisfied and evidence of that fact furnished to him in the

form of an abstract of title, showing the same to be clear of all encumbrances and liens.    Another theory argued by counsel is that because Early did not demand a rescission of the contract on January 1, 1920 (the date to which he agreed to carry the H. & C. Newman indebtedness) and surrender possession of the land, that his failure to do so constituted a waiver of his right to rescind.    In support of this contention, they cite the following cases: *Fletcher* v. *Wilson,* S. & M. Ch. 376; *Gale* v. *Green,* 12 Am. Dec. 548; *Kent* v. *Stephens,* 90 So. 241; *Hanna* v. *Harper,* 3 S. & M. 793.   This is all excellent law but it is not applicable here.

There can be no question but that under the circumstances and facts set out in all these cases, the vendee failed to make out proper cases for equitable intervention, and relief; therefore, this was denied them.   It is very clear that the equitable principles announced in these cases have no application to the case at bar.

ANDERSON, J., delivered the opinion of the court.

Appellant, Mrs. Ollie Shields, sued appellee, W. R. Early, in the circuit court of Sunflower county for damages claimed to have been suffered by appellant on account of an alleged breach of contract for the sale of land by appellant to appellee.   The contract in question was in writing and was exhibited with the declaration.   The appellee demurred to appellant's declaration, assigning several causes.   The court sustained the demurrer and appellant declining to amend her declaration final judgment was entered dismissing the suit, from which appellant prosecutes this appeal.

The contract which is the foundation of this suit is in this language:

"This contract, made and entered into by and between Mrs. Ollie Shields, party of the first part, and W. R. Early, party of the second part, witnesseth: That for and in consideration of the sum of two hundred fifty dollars

to the party of the first part this day paid, the receipt whereof is hereby acknowledged, the party of the first part hereby agrees to sell and convey by warranty deed to the party of the second part, the following described land situated in Sunflower county, Miss., to-wit: All of section 5, township 17, range 5 west, containing 637.84 acres, together with the buildings and improvements thereupon situated, and the appurtenances thereunto belonging, except the merchantable timber on said land, all of which is reserved to the party of the first part, and none of which is to be conveyed to the said W. R. Early, provided, however, that the party of the first part agrees to remove said timber by August 1st, 1920, the price to be paid for said land shall be thirty-five dollars and fifty cents per acre, or a total of twenty thousand seven hundred twenty-nine dollars and eighty cents, the same to be paid as follows: One-fourth of the purchase price to be paid in cash, upon the delivery of the deed; one-fourth to be paid twelve months after the first payment is made; one-fourth to be paid twenty-four months after the first payment is made; and one-fourth to be paid thirty-six months after the first payment is made, all of said payments except the first to be represented by promissory notes, payable to party of the first part, and bearing six per cent. interest from their dates.

"It is understood that there is a lien upon said land held by M. Tonkel, which lien shall be canceled before the delivery of the deed or the payment of any part of the purchase money. It is further agreed that the lien held by H. & C. Newman shall be paid also, but in case the notes held by them shall become due and payable before the sale of this land is consummated under the terms of this contract, that the said W. R. Early will take said notes up and carry them for the party of the first part, until the sale of the above-described land is completed between them, but not later than January 1, 1920, then the amount so taken up by the said Early shall be applied as a part of the first or cash payment on said land. The possession

of the property is to be delivered to the party of the second part, upon the delivery of the deed to him, and the party of the second part is to pay the taxes on said land for the year in which the deed is delivered, provided the same shall be delivered prior to July 1st.

"It is agreed and understood that the two hundred fifty dollars cash payment, above referred to, is to be considered a part of the purchase price of the said land, and deducted therefrom provided the party of the second part shall carry out the provisions of this contract; otherwise, it shall be considered as liquidated damages accruing to the party of the first part. It is agreed that the party of the first part shall furnish to the party of the second part, an abstract of title to said land, showing the good merchantable title thereto free from encumbrances, except as may be assumed by party of the first part."

Appellant averred in her declaration a compliance on her part with the contract according to its terms, and failure and refusal on the part of appellee to perform. The view taken by the court renders it necessary to notice only one of the grounds of demurrer, the fourth, which is in this language:

"A cash payment of two hundred fifty dollars was made, which it was agreed between the parties to said contract, should be considered as, and was, liquidated damages to accrue to the plaintiff, should the said contract be breached by the defendant, and there is, and could be, no further liability on the part of said defendant."

The question is whether the stipulation in this contract for the surrender by the appellee of the cash payment on the purchase price of the land of two hundred fifty dollars in case the appellee should breach the contract provides for a penalty or liquidated damages.

If it was a penalty to insure the performance of the contract by appellee, and was not intended as compensation to appellant for any damages she might suffer on account of a breach of said contract by appellee, then appellant is not barred from recovering the damages she may have

suffered on account of such breach. On the other hand, if the said sum is to be treated as liquidated damages intended by the parties to compensate appellant for any breach of said contract by appellee, then appellant has no cause of action, because she has already received, by retaining said cash payment of two hundred fifty dollars, compensation for any damage she has suffered. It should be borne in mind in considering this question that a penalty imposed by the terms of a contract on the party committing a breach thereof is not enforceable either in equity or at law. A penalty is provided for, for the purpose of terrorizing a party to a contract into complying with its terms. The English courts and the courts of this country have generally held that such penalties are unenforceable. There is an interesting discussion of the origin and history of the development of this principle by the English and American courts in 2 Williston on Contracts, chapter 25, sections 773 to 776, inclusive. An example of the enforcement of the principle will be found in *Coker* v. *Brevard,* 90 Miss. 64, 43 So. 177.

The main difficulty attending a decision of this question is that many of the courts have given very little weight to the agreement of the parties to the contract with reference to whether the sum of money to be received or retained by one party as the result of the breach of the contract by the other was intended as a penalty or liquidated damages. In fact, they seem to have given very little weight to the language of the agreement with respect to that. The fact that the parties to a contract used the words therein "penalty" or "liquidated damages" may *prima facie* be supposed to mean what they say, yet the expression used is not conclusive. The court should ascertain whether the payment stipulated was in truth a penalty or liquidated damages. The courts lean in favor of an interpretation that such a stipulation is a penalty. The essence of a penalty is a payment of money stipulated as *in terrorem* of the party breaching the contract; while the essence of liquidated damages "is a genuine covenanted pre-estimate

of damages." Whether a sum stipulated is a penalty or liquidated damages is a question of construction "to be decided upon the terms and inherent circumstances of each particular contract, judged as at the time of the making of the contract, not as at the time of the breach." Various tests are used to assist in the construction of the contract. The stipulation will be held to be a penalty if the sum agreed on is extravagant and unconscionable in amount in comparison with the greatest loss that could reasonably follow the breach. If the cash payment or deposit is made in part performance of the contract, it will generally be regarded as liquidated damages if not excessive provided the actual damages are uncertain or difficult of computation. Williston on Contracts, vol. 2, sections 783 and 784; 8 R. C. L., p. 576, section 125; *Wilson* v. *Mayor,* 83 Md. 203, 34 Atl. 774, 55 Am. St. Rep. 339; *Bright* v. *Rowland,* 3 How. 398; *Jones* v. *Miss. Farms Co.,* 116 Miss. 295, 76 So. 888. The tendency of the modern decisions is toward construing the contract as written.

It was held in *Jones* v. *Miss. Farms Co.,* 116 Miss. 295, 76 So. 880, that in construing a contract to determine whether a clause calls for liquidated damages or a penalty the intention of the parties is the thing the court is anxious to ascertain and give effect to, and that such intention must be drawn from the words of the whole contract, and if viewing the language used it appears clear and explicit the contract should be construed as written unless it contravenes some public policy; that if the contract is doubtful the court will look to the surroundings of the parties and the construction placed upon the contract by the parties during its existence in order to ascertain their intention; that in considering whether the sum stipulated for was intended as liquidated damages, if such sum is not out of proportion to the damages that might probably result from a violation of the contract it will be treated as liquidated damages; that if the contract is for the performance of a specific act for the nonperformance of which damages could easily be ascertained then it may be treated as

a penalty. Applying these principlés to the case at bar, we are of opinion that the cash payment of two hundred fifty dollars in this case was intended not as a penalty but as liquidated damages. In the very nature of the transaction the damages resulting from a breach of this contract are so uncertain and difficult of computation that the parties must have intended the two hundred fifty dollars in question here as compensation to the appellant in the event of a breach of the contract by appellee. The contract simply so stipulates in so many words. We do not think this is a case where the parties have said one thing in their contract, and the court would be justified in holding that they meant another and a different thing.

*Affirmed.*