GRIFFIS, P.J.,
dissenting:
¶ 25. This case requires the interpretation of a liquidated-damages clause in a construction contract. The School District contends that because Hovas was thirty-nine days late in substantial completion, it was entitled to deduct $19,500 as liquidated damages from the balance of the construction price due Hovas under the construction contract. Hovas argues that (1) any delay was not due to its fault, but was due to the late delivery of the steel building parts, the material having been timely ordered by Hovas; (2) the liquidated-damages provision in the contract is not a reasonable pre-estimation of damages, nor is it a reasonable estimate of actual damages determined by the School District that would be incurred by the School District upon late completion and, *670 as a result, is nothing but a penalty provision in the contract; and (3) liquidated damages should not be assessed in a situation where the contractor’s delay caused no actual damages to the School District.
¶ 26. The construction contract was for (1) the installation of gym windows, (2) the renovation of existing restroom facilities (which is referred to as the “500 building”), and (3) the construction of a new metal building (which is referred to as the “100 building”). Paragraph 3.3 of the contract provided:
The Contractor shall achieve Substantial Completion of the entire Work not later than One Hundred Eighty Days (180) from the date of commencement, or as follows:
The Contractor shall achieve Substantial Completion of the entire Work not later than June 6, 2008[,] with final completion being achieved on or before July 6, 2008[,] subject to the terms and conditions of the contract. For each calendar day thereafter that substantial completion of the contract is delayed, liquidated damages will be assessed as follows: Five Hundred Dollars ($500.00) per calendar day. NO EXTENSIONS WILL BE ALLOWED.
The architect gave notice of substantial completion on July 15, 2008. Thus, the project was completed thirty-nine days after the required completion date. The School District withheld payment of $19,500 from the retainage. This suit seeks the recovery of this amount. We only consider the liquidated-damages clause.
¶ 27. There is no dispute that Hovas properly and timely replaced and installed the gym windows.
¶ 28. There appears to be no claim that Hovas was late in the completion of the work for the renovation of the existing restrooms in the 500 building. Instead, as a basis for actual damages, the School District only claims that Hovas’s work on the restrooms was defective. The School District claims only that:
Hovas’ failure to properly renovate the restrooms in the 500 building caused disruptions during the school year as students had to leave the 500 building and go to other buildings on campus during the entire 2008-2009 school year for use of the restrooms. [The School District] incurred additional damages when it had to pay another contractor for remedial work performed on the plumbing Hovas never properly repaired.
The School District’s claims here are not for late performance of the restroom renovation, under paragraph 3.3. The circuit judge found “[t]he delay also caused disruptions during the school year as students were unable to use restrooms in the renovated building. Students had to leave the building to go to other buildings to use the restroom.” Thus, there is evidence that the School District was damaged due to the deficient or defective work of Hovas in the restroom-renovation project. Such damages, however, are not recoverable under paragraph 3.3 for late performance. There was simply no relation between the damages alleged from the defective restroom renovation and the liquidated-damages clause. Thus, I find no basis for the award of liquidated damages under paragraph 3.3 due to defective performance of the restroom renovation, and the remedy for defective performance is separate and distinct from the remedy for late performance.
¶ 29. The only basis for liquidated damages resulted from Hovas’ late completion of the 100 building. The School District argues that there was “no reason Hovas did not complete this project on time even with the delay in receiving the steel build *671 ing from Ruffin [the supplier].” Hovas argues that the contract called for the construction of a pre-engineered, prefabricated metal special design steel building to house restrooms for men and women, a faculty lounge, and other things. The pre-engineered, prefabricated metal special design steel building was a special construction steel building that would require certain additional special features.
¶ 30. Ruffin Building Systems was the manufacturer and supplier of the pre-engi-neered, prefabricated metal building. Hovas ordered the building from Ruffin on December 20, 2007. On January 16, 2008, Ruffin advised Hovas of a revised contract amount and a change order. Ruffin also advised Hovas that the building was “placed on fabrication hold until signed change order is received by Ruffin.” On February 4, 2008, Ruffin sent Hovas three copies of drawings of the project. On February 7, 2008, Hovas sent three sets of the Ruffin drawings to Charles Laney of JBHM Architects, for approval. On February 21, 2007, Hovas sent one set of drawings marked “Approved” and “Approved as Noted” to Ruffin. On February 28, 2008, Ruffin advised Hovas that the “hold” on the building was removed and delivery was scheduled for “05/05/08.” The steel parts for the building were delivered to the job site on May 5, 2008. The steel building was erected on May 22, 2008. The interior of the steel building could not be completed until the building was received and erected.
¶ 31. The School District’s fall semester began on August 4, 2008. Hovas argues that no loss of use of the building was sustained by the School District. The school was not prevented from occupying the facility prior to the start of the school year.
¶ 32. Larry Green, the Superintendent of Western Line Consolidated School District, by deposition testified:
Q. ... But your contention is that you got possession sometime in the first to middle of July, sometime in that time frame. Is that right?
A. That’s correct.
Q. Okay. Now, school did not open until early August?
A. That’s correct.
Q. All right. Did [the School District] suffer any actual damages as a result of the delay or not?
Counsel for [the School District]: Object to the question.
Q. I’m talking, did you have to pay any money out or anything like that as a result of that?
A. The part that you may be referring to that I’m hearing you from is the building being turned over to the district versus the beginning of the school year. Is that what you’re coming at me with?
Q. No. I’m trying to find out — we’re talking about liquidated damage provision here. But the school didn’t actually suffer any out-of-pocket damages, did it.
Counsel for [the School District]: Same objection.
A. I don’t know what you’re referring to on “damages.”
Q. Well, I’m talking about money.
A. The thing that has been troublesome with it is the fact that it wasn’t completed on the substantial date of completion per the contract. Okay. Now, the preparation has to be done before the school year opens. I’m preparing right now for August. I can’t wait until the week before. If I do, I’m not ready. And my preparation starts many, many days before it. *672 So the addition part, if you will, to the existing building, all the things had to be placed in there in preparation for the school to start. The restroom renovation in the 500 building, that had to be gotten ready for. And both areas there is new floor tile put down. That has got to be taken care of in preparation for school to start.
So all of that had to be done before, you know, the kids came in and the teachers came in. The restrooms in the 500 building have been a continual problem all year long after we took possession of the contractor’s work. So those kind of things had to be done, not to say nothing about the grief it caused me. And I don’t know if you can put a monetary figure on that amount or not. I do have a few gray hairs.
Mr. Green talked about the action necessary for the tile floor. Yet, the tile floor was completed by Hovas before the school year began.
¶ 33. In his book on Mississippi Construction Law, preeminent construction lawyer David Mockbee succinctly stated the applicable law:
[A]ctual damage must be incurred by the owner for a liquidated[-]damage[s] provision to be enforceable. Mississippi courts will not enforce a liquidated[-]damage[s] provision where the assessment of liquidated damages constitutes a penalty, i.e., the liquidated damages assessed must bear some reasonable proportion to the loss actually suffered. Ruckelshaus v. Broward County School Board, 494 F.2d 1164 (5th Cir.1974). The Court in Board of Trustees v. Wood, 779 F.2d 1106, 1107 (5th Cir.1986) (quoting Shields v. Early, 132 Miss. 282, 95 So. 839 (1923)) stated that:
[t]he essence of a penalty is a payment of money stipulated as in terro-rem of the party breaching the contract; while the essence of liquidated damages “is a genuine covenanted pre-estimate of damages.”
See also Vanlandingham v. Jenkins, [207 Miss. 882] 43 So.2d 378 [578] (1950). For example, in Massman Construction Co. v. City Council of Greenville, Mississippi, 147 F.2d 925 (5th Cir.1945) (footnotes omitted), the United States Court of Appeals for the Fifth Circuit, applying Mississippi law, held that liquidated damages would not be assessed in a situation where the contractor’s delay caused no actual damages to the owner. In Massman, Massman Construction Company contracted to work on the construction of a bridge over the Mississippi River at Greenville. The contract entered into by Massman specified liquidated damages for late completion. At the trial it was determined that in fact Massman had consumed 96½ days beyond the contract time to complete its work. In spite of this delay, however, it was shown that Massman’s delay did not result in any delay as to the use of the bridge. Based upon these facts, the court held that since the City had suffered no actual damages, liquidated damages could not be enforced against the contractor. Specifically, the court stated:
Under all the facts and circumstances of this case, the enforcement of the provision in question [the liquidated-damages clause] would be inequitable and unreasonable, and would amount to the infliction of a penalty rather than the allowance of liquidated damages.
David Mockbee, Mississippi Construction Law 275 (2d ed.2005).
¶ 34. The evidence indicated that the construction project was completed twenty *673 days before the start of school. There were no actual damages sustained by the School District. The problems with the restrooms occurred after substantial completion, during the school year following the substantial completion. The damages referred to in the circuit judge’s order occurred “during the school year” after substantial completion. Thus, such damages were not related to delay in the delivery of the building.
¶ 35. There was simply no evidence to support the circuit court’s decision that Hovas’ actions caused a delay in the beginning, opening, or operation of school; caused a loss of use of the building for school operations; or caused the School District to incur any out-of-pocket expenses from the delay. In Massman, Massman’s delay did not result in any delay as to the use of the bridge. Massman, 147 F.2d at 927. Massman held that the City suffered no actual damages in use of the bridge. Id. Here, the School District received the construction project twenty days before the start of school. No actual damages were suffered. As such, the liquidated-damages clause cannot be enforced.
¶ 36. I would reverse the judgment of the circuit court awarding to the Board of Trustees of Western Line Consolidated School District the sum of $19,500 as liquidated damages and render an award in the sum of $19,500 to Hovas against the Board of Trustees of Western Line Consolidated School District, as payment for the balance of the construction price due under the construction contract. Therefore, I respectfully dissent.
BARNES, ISHEE AND CARLTON, JJ., JOIN THIS OPINION.