RINGOLD *v.* GOYER CO. *et al.*

(Division B. Dec. 5, 1932.)

[144 So. 706. No. 30259.]

Frank E. Everett and Oscar B. Townsend, both of Indianola, for appellant.

C. C. Moody, of Indianola, and Shands, Elmore & Causey, of Cleveland, for appellees.

Argued orally by **Frank E. Everett**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

The complainants, the Goyer Company, W. B. Mallory & Sons Company, and the Elmer Nowell Lumber Company, filed a creditors' bill in the chancery court of Sunflower county against Mrs. Lizzie M. Ringold, alleging that Mrs. Lizzie M. Ringold is the widow of D. O. Ringold, deceased, and that during his lifetime he carried on business on a large scale, the business consisting chiefly in the operation of a plantation of about one thousand, four hundred acres, in Sunflower county, Mississippi, owned then and now by Mrs. Lizzie M. Ringold; that D. O. Ringold carried on said business in his own name, using the means of his wife, but there was no written contract between them in regard thereto. It was further alleged that the said complainants relied upon the belief that the plantation, houses, and means of the said Mrs. Lizzie Ringold were liable to the payment of D. O. Ringold's debts, and upon such belief they extended him credit in large sums for goods, wares, and merchandise sold and delivered to him and which were used in the operation of said business. The accounts were filed as exhibits to the bill.

It was further alleged that the complainants had made frequent and urgent demands upon the defendant for the payment of the indebtedness, but that she had wholly refused to pay; that the said D. O. Ringold carried a

large insurance on his life, which amounted, in complainants' belief, to more than forty thousand dollars in several solvent companies.

It was then averred that the defendant had promised the compainants that she would pay their accounts when such insurance was collected, but that said insurance had been paid to her and she had refused to pay them. On being asked as to what disposition she had made of the insurance checks, she stated that she had deposited thirteen thousand dollars in the Bank of Ruleville and that the bank had applied said amount, except a small amount drawn out by the defendant, in the payment, pro tanto, of a past-due indebtedness of the defendant to the bank.

Complainants further alleged that they have not only made demand for information as to where said insurance checks are, but they have exhausted all other reasonable and diligent methods to obtain said information and cannot obtain such information that the defendant has such knowledge or information, but conceals the same from these complainants, and conceals her said insurance money and checks from them, and unjustly refuses to apply the same, or any part thereof, to complainants' debts, with intent to defraud complainants of their just debts, and that the said defendant will assign or dispose of said checks for insurance with the intent to defraud complainants; that she will convert the said checks into money and place same beyond the reach of these complainants so as to defraud them of their just debts. They further alleged that they made inquiries, and used all efforts to learn the names of the other insurance companies which carried insurance on the life of D. O. Ringold, but have been unable to obtain such information, and that Mrs. Lizzie M. Ringold is possessed of such information. It was then alleged that the real property, consisting of said plantation and the houses thereon, constitute all the property owned by Mrs. Ringold, and that said plantation is heavily incumbered to secure the

payment of an indebtedness due the Bank of Ruleville and other long-time loans in large amounts, and is also subject to tax liens of various kinds named in the bill, and if sold under any of these, it would bring but little more than enough to pay the indebtedness secured by prior liens, and not anything like enough to pay the complainants.

It was further alleged that if the complainants' debts are not paid out of the insurance funds, their just debts will be lost to them, and they pray a discovery, an injunction, and a writ of attachment of the property, real and personal, of the said defendant, to an amount sufficient to satisfy said indebtedness, because they have no adequate remedy at law, and are entitled to said discovery, injunction, and attachment.

They further allege that because of the facts, and the conduct of the defendant, it is manifest that she has the purpose and intent to hide and conceal said funds from the complainants, and that if said complainants give notice of their application for an injunction, they would lose all the benefit of the injunction, because the defendant would immediately make away with said funds and place same beyond the reach of complainants and the process of this court. They, therefore, pray for specific discovery from Mrs. Lizzie M. Ringold and the other defendants, and for an injunction against Mrs. Ringold to prevent her from transferring or disposing of funds received from said insurance checks, and that the property, real and personal, of Mrs. Ringold, be attached to an amount sufficient to satisfy said indebtedness and that a writ of garnishment be issued against the insurance companies, and for a final decree in favor of the complainants for the amount owing to them.

The chancellor issued his fiat for injunction and attachment on bond being made for sixteen thousand dollars, and this bond being given, the writ of attachment and injunction issued, and the attachment was levied on the plantation of Mrs. Ringold, and she was enjoined

from transferring or disposing of any insurance money, checks, or funds received by her as beneficiary in the policy on the life of D. O. Ringold, deceased, in any manner whatever until she had paid the complainants' accounts.

The bill of complaint invited creditors to join, and certain creditors came in and joined, accepting the allegations and the prayer for relief.

The defendant answered the bill, admitting the receipt of certain money as insurance, some of which was received before the filing of the bill and some since, but denying that she was indebted to the complainants; that D. O. Ringold carried on business with her means, and alleging that she and her manager conducted the plantation on her own account. She denied that the complainants extended credit under the belief that D. O. Ringold was operating her business, and relied upon her for payment, but alleges the facts to be that none of the complainants ever presented to the defendant an itemized account of any sum or sums they claimed she was responsible for, but that they merely stated to her that D. O. Ringold was largely indebted to them and requested her to pay the same without presenting her with any account whatever; that she requested each of the complainants to probate his account as required by law, but they refused to do so. She admitted that D. O. Ringold carried insurance in one company for twenty-one thousand dollars, in another twelve thousand dollars, in another one thousand dollars, in another eight hundred eighty-two dollars, and in another for one thousand dollars. She denied that she promised the complainants that she would pay their accounts when her insurance was collected; and denied that the complainants requested information as to where the insurance was, or that she stated she had deposited the same in the Bank of Ruleville. She stated that she deposited thirteen thousand dollars in the Bank of Ruleville to which she owed a large sum of money, and which held a mortgage on

her land, stock, and crop, and that the money deposited was applied to this debt.

She denied that she had this information at the time the complainants requested her to pay the accounts of D. O. Ringold without probating the same or offering to furnish her any evidence of the correctness of the accounts.

She admitted that she now has the information about said checks and the amount of money received, and that she now has the checks or the proceeds thereof, except the amount deposited in the Bank of Ruleville, which was charged against her and applied to the payment of certain notes held by said bank.

She denied that she now has, or ever had, any intention to defraud complainants of their just debts; denied that she has or will assign or dispose of the insurance checks with the intent to defraud the complainants; and she denied that she has, or will, convert the checks into money and place it beyond the reach of the complainants. She specifically denied that she now has, or ever had, any intention to defraud complainants of their just debts.

She admitted that her one thousand four hundred-acre plantation, the personal property thereon, and the insurance funds left by her husband, constitute her entire property; but denied that if said property was sold there would not be paid therefor a sufficient amount to pay all the loans and the complainants, if your respondent were indebted to them.

She denied substantially the other allegations of the bill, which denials are not deemed essential to be set forth. She filed with her answer a plea or suggestion that she, as administratrix of the estate of D. O. Ringold, is a proper and necessary party to the suit, and filed a demurrer to the bill of complaint, setting forth a number of reasons why the bill should be dismissed, in effect, that there was no equity on the face of the bill. The defendant also filed a motion to dissolve the injunction, setting forth the same reasons assigned in the de-

murrer. The court overruled the motion to dissolve the injunction, and overruled the demurrer, granting an appeal to settle the principles of the case.

We think the attachment and the injunction both were unauthorized under the allegations of the bill. The allegations of the bill were not to the effect that she had property or rights of action which she was fraudulently conveying, nor that any sort of device has been resorted to by the defendant for the purpose of hindering, delaying, or defrauding her creditors.

The citizen has the right, under the law of the state, to apply money or property in satisfaction of some debt prior to the satisfaction of other debts. In other words, the citizen has the right, so far as the state law is concerned, to prefer one creditor to another; and so long as Mrs. Ringold applied her means to the satisfaction of debts, she was within her rights so far as the state law is concerned, and her doing so does not render her liable to attachment or injunction.

It is not alleged in the bill that she is concealing and undertaking to remove her property out of the state, or the jurisdiction of the court, to defraud creditors generally, but merely that she has refused to give the information asked by them; and the whole scheme seems to be that the complainants filed their bill and secured attachment and injunction, to compel their debts to be made preferred claims, and to prevent the defendant from applying her property to the payment of other debts owed by her which constituted liens upon her property. Complainants nowhere set forth any lien upon the insurance money, or any assignment of any interest to them constituting an equitable lien or an equitable assignment, or a legal lien or a legal assignment, or any other fact which would give them a claim amounting to a lien upon an interest in the insurance policies or their proceeds.

In order for an attachment or an injunction to lie, as sought in this case, there would certainly have to be

some right to the fund constituting an interest in it, or a lien upon it. An attachment can only issue as a statutory attachment on compliance with the grounds set forth in the statute, which, as we have shown, was not done.

A chancery court has jurisdiction equivalent to attachment of personal property in a writ of sequestration. While this is not generally used at the present time, it is still an available proceeding. In order to obtain sequestration, a complainant shall make an file an affidavit showing that he has good cause to believe, and does believe, that there is danger of the property being removed or concealed so as to be beyond the process of the court, or that the property has been transferred so as to defeat the rights of the complainant. In Griffith's Chancery Practice, page 528, it is said that: "With these two exceptions, and as the general rule, the suit 'in reference to the personal property' or wherein the property to be sequestered is 'involved' must, in order that a sequestation of the property may be had as an auxiliary thereto, be one which asserts some specific right to, interest in, or lien upon that property. In other words, with the two exceptions mentioned, the suit 'in reference to the personal property' in so far as a sequestration of it shall be concerned, must be more than simply that the property may be seized and held to be later applied on a decree purely in personam."

The bill also seeks discovery of the defendant. As it is set forth in the bill, there is no allegation that would warrant discovery, and no right or claim to the insurance policies that would entitle the complainants, in advance of a judgment or decree, to discovery. The complainants can only have discovery of what is necessary for their own use, as a deed under which they claim, and they will not be allowed to pry into the business of the defendant. The general rule laid down limits discovery to the use of the complainant, and forbids discovery of the defendant's evidence. "However, it is dif-

ficult to draw a line between what constitutes the complainant's case and what the defendant's. The defendant must, in general, have a claim or interest; otherwise, a bill for discovery on his part does not lie. It must be for matters which lie only in the knowledge of the defendant, and must call for something which is not in the complainant's power to set out in his bill.'' Fletcher's Equity Pleading and Practice, page 859.

Looking through the allegations of the bill and the proceedings critically, it appears that the suit here is not one in which a chancery court should entertain jurisdiction. The effort seems to be to impound all the property of the defendant without any equitable right to it, so as to compel her to recognize their claim as one of the claims against her rather than as one against the estate of D. O. Ringold, and to prevent any legal challenge of the legality of their claim against her.

As stated, she is not subject to injunction or attachment on the facts alleged, nor are complainants entitled to a discovery in advance of the judgment, under the facts alleged. There is no claim warranting either discovery, attachment, or injunction, in the present state of the record.

The chancery court should not issue writs of injunction and attachment until satisfied from the facts that they are sufficient to afford the relief asked, and satisfied from inquiry as to the ground on which asked.

While this court cannot, under section 147 of the Constitution, reverse the decree of a chancellor merely because he entertains jurisdiction of a suit at law, still the chancery court, itself, is under the duty to observe the distinctions between law and equity, and to take jurisdiction of cases only where some ground of equity exists that warrants it in taking jurisdiction.

In trial of suits at law upon disputed issues of facts, jury trial is an important right, and a party entitled to it should not be deprived of it until the chancery court is satisfied that some equitable ground exists warranting

it in drawing the same to itself for a full decision of all rights involved.

In the case at bar, as we see it from this record, there is only a suit at law involved, and unless the bill is materially amended the chancery court should transfer the case to a court of law if demand therefor is made.

The judgment of the court below will be reversed, the demurrer will be sustained, the attachment discharged, and the injunction dissolved, and the court will assess damages for the wrongful suing of the attachment and injunction.

Reversed and remanded.