## CHICAGO INV. CO. OF MISSISSIPPI *v.* HARDTNER.

(Division A. May 15, 1933. Suggestion of Error Overruled Nov. 6, 1933.)

[148 So. 214. No. 30569.]

**W. L. Guice,** of Biloxi, for appellant.

Gardner & Backstrom, of Gulfport, for appellee.

Argued orally by **W. L. Guice**, for appellant, and **Oscar Backstrom**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

From a decree of the lower court sustaining a demurrer to the bill of complainant exhibited by the appellant, Chicago Investment Company of Mississippi, against the appellee, Rudolph H. Hardtner, and dismissing the original bill, appeal is prosecuted here.

The essential facts set out in the bill are about as follows: The appellant, Chicago Investment Company of Mississippi, a corporation chartered under the laws of this state, and appellee, Hardtner, entered into a lease contract by which Hardtner leased to the Chicago Investment Company certain lands and improvements in Gulfport, Mississippi, for a term of ninety-nine years. Appellant paid the stipulated rental promptly for five years until October, 1930, when it defaulted in the payment of its rent, which was one thousand, five hundred dollars due in advance every three months. Upon this default, under the terms of the lease, the appellee declared a forfeiture or termination of the lease and took over the leased premises into his possession from the Chicago Investment Company of Mississippi. The bill further stated that the investment company was indebted to Hardtner for certain taxes and a balance due on rent, but that Hardtner had in his possession a ten thousand dollar deposit which had been placed with him for two distinct purposes, to-wit, to guarantee the prompt payment by the Chicago Investment Company of Mississippi of the rental while the property was being used; to guarantee to Hardtner

that if the investment company should construct upon the leased premises a building, or make any additions to the building thereon, the same should be free from any liens or claims in favor of any other person, material-men, mechanics, etc. The bill further set out that an accounting was necessary, and that the Chicago Investment Company of Mississippi desired a cancellation of the lease on the record, and a decree for the amount found due it from Hardtner.

The lease contract is quite lengthy, and we shall set forth certain material clauses with a digest of the balance. Among other things, the contract provided:

"This agreement entered into this day by and between Rudolph H. Hardtner, of Gulfport, Mississippi, hereinafter referred to as lessor, and the Chicago Investment Company of Mississippi, a corporation, of Gulfport, Mississippi, hereinafter referred to as the lessee; witnesseth:

"1. The lessor does hereby lease unto the lessee, and the lessee does hereby hire from the lessor, the following described property, situated in the City of Gulfport, County of Harrison, State of Mississippi, and more particularly described as follows: (here follows description.)

"2. This lease is made and accepted for a period of ninety-nine (99) years, commencing on October 1st, 1925, and ending on October 1st, 2024, at an annual rental of six thousand dollars ($6000.00) payable quarterly in advance, that is to say, fifteen hundred dollars ($1500.00) on October 1st, January 1st, March 1st, and June 1st of each year during the life of this lease, beginning October 1st, 1925.

"3. As a further consideration for the execution of this lease, the lessee herein agrees to and has this day deposited with the lessor the sum of ten thousand dollars ($10,000.00) in cash, the receipt of which is hereby acknowledged, to be held by the lessor, and the lessor hereby agrees to pay to the lessee interest on said ten thousand dollars ($10,000.00) at the rate of four and one-half per cent (4½%) per annum, payable annually, and

in the event the said lessor fails to pay the interest on the said money when the same becomes due, then in that event the lessee will have the right to retain the same from the amount of rent then due, or next to become due by the lessee; said amount of ten thousand dollars ($10,000.00) to be paid by the lessee to guarantee the faithful performance of the following obligations assumed by the lessee herein;

"(a) To guarantee the prompt payment by the lessee to the lessor of the rent as hereinbefore stipulated.

"(b) To guarantee to the lessor that if the lessee should construct upon the herein leased premises a building, or should make any addition to the present building on said premises that the same should be free from any liens and claims in favor of materialmen, laborers or contractors."

Section 4 of the contract valued the building on the premises at twenty thousand dollars, and granted the lessee the right to demolish the present building and create a new building or make additions. Paragraph (a) of that section provided that in the event the lessee erected a building of two stories on the premises at a value of not less than $30,000, the lessor was to return to the lessee the $10,000 deposited, or in case of failure so to do the lessee was entitled to absorb that amount in rents. Paragraph (b) of section 4 provided for a bond to protect the lessor from all liens in case of damage arising out of or connected with the destruction or removal of buildings or improvements. Paragraph (c) of the same section is as follows: "Any building or buildings that shall be erected on the property herein leased shall, at the termination of this lease, either by limitation, forfeiture or otherwise, revert to the lessor, free from any lien, claim or charge, in favor of lessee, or any person whatsoever, and without any reimbursement being due the lessee."

Paragraph (d) of the same section required the lessee

to execute a bond for the rebuilding of any building in case the old one was demolished.

Section 5 granted the lessee the right to transfer, assign, or mortgage the lease, in whole or in part.

Section 7 provided that the lessee should pay all taxes, assessments, and charges of every kind .levied against the property before the assessments or taxes became delinquent, and provided further for forfeiture of the lease, at the option of the lessor, in case of the lessee's delinquency in this behalf.

Section 8 stipulated that the lessee was to keep the property insured at its expense.

Section 11 provided that the total or partial destruction of, or damage to, the building should not in any way effect or vitiate the lease or relieve the lessee from the payment of the rent.

Section 12 provided for the payment of all incidental expenses, light and fuel, etc., by the lessee.

Section 13 provided that the sum of six thousand dollars a year should be a net revenue to the lessor, with the exception of inheritance and income taxes.

Section 17 is, in part, as follows: "In the event that the lessee herein shall default on any of the obligations herein assumed by it, including default in the payment of rent, and if such default shall continue for thirty (30) days after written demand upon said lessee by the lessor to remedy such default, then the lessor shall have the option to declare this lease forfeited."

Section 19 granted the lessee the right and option to purchase the property for a period of ten years from the date of the contract, for the sum of one hundred thirty thousand dollars, and in that event the ten thousand dollars deposited by the lessee with the lessor should be applied by the lessor upon the first payment.

Section 21 noticed a mortgage for ten thousand dollars, and provided for the payment thereof.

The contract lease contained provisions for collection of insurance in case of damage to or destruction of the

building, and provisions for the lessor's protection from liability in case improvements were altered, replaced, or erected on the premises.

As alleged in the bill, on October 11, 1930, the lessor, in writing, declared a default in the payment of the rent due on October 1, 1930, amounting to one thousand, five hundred dollars, and demanded payment within thirty days. The lessee did not pay. On the 11th of November, 1930, the lessor, in writing declared the lease contract forfeited. Receipt of this notice was acknowledged on the 14th of November, 1930, in which lessee admitted its default, its inability to pay and perform the covenants, and demanded the return of its ten thousand dollars, which was refused.

The demurrer raised the legal issue, here to be determined, as to whether or not the ten thousand dollars deposited as a part of the consideration of the lease was liquidated damages for the breach of the contract in any particular, and whether or not the contract showed on its face that, being liquidated damages, the ten thousand dollars became the property of Hardtner upon the breach of the contract in the failure to pay the rent, or whether or not it was held as liquidated damages for the payment of the rent or damages on account of the failure to pay same during the life of the entire term, until 2024. It is the contention of the appellant that the deposit was for specific purposes and not a guaranty for the performance of the contract, and not a guaranty for the payment of rent after the termination of the lease by the lessor, and that appellee, the lessor, could not retain the leased premises and collect the rent therefor, and that the contract did not provide for such conditions, and at all events the deposit in this case would be a penalty and not liquidated damages.

Leaving out of view the contention of appellant that the bill of complaint should not have been dismissed, for the reason that the lease contract on record, having been declared forfeited, should be canceled by the court

as it had not been canceled of record, and that it admitted some indebtedness and prayed for an accounting, we shall go at once to the heart of the case and determine whether or not, under the terms of this lease, there was vested in Hardtner any right to retain the ten thousand dollar deposit, and if he does so retain it, whether or not it is a penalty or liquidated damages. The court below evidently reached the conclusion that under the terms of the lease the ten thousand dollars deposit was a guaranty for the payment of any damages accruing for a failure to pay the rent during the ninety-nine year period, although the lessor had gone into possession of the leased premises and was presumably receiving the full rental value thereof at the time this bill was filed.

It is quite clear from a reading of this lease contract that the purposes for which the ten thousand dollars was deposited are to be found in the instrument before and preceding paragraph (a) of section 3, and that the deposit was to guarantee the prompt payment by the lessee to the lessor of the rent as stipulated in the contract, and further to guarantee to the lessor that if the lessee constructed a building thereon or additions the same should be free from any liens or claims in favor of materialmen, laborers, and contractors. It is plain that this contract is specific, unambiguous, and is its own exponent of all its parts. The ten thousand dollars did not in express terms or by implication secure the payment of taxes, insurance, and other obligations assumed by the lessee. The contract specifically makes no reference to any damage accruing to the lessor in the event he declares the lease forfeited for any reason granted him so to do in the entire contract. There was no stipulation for liquidated damages or for any damages beyond the period of the date of the termination of the lease. We have no hesitancy in making this declaration from a survey of this entire instrument and all its parts. It is clear that the ten thousand dollars deposited was in earnest, or a guar-

anty for the prompt payment of the rent in quarterly annual payments in advance as and when therein stipulated. Can it be said then that it shall be read into this contract that which the parties thereto have so carefully and scrupulously omitted therefrom? Shall this court by interpretation and interpolation now declare that this deposit is to be held by and forfeited to the lessor as a guaranty that he will not lose from the year 1930 until the year 2024 in the matter of rental? In other words, to sustain the lower court we must hold that this contract implies, for it is not so expressed, that the ten thousand dollar deposit is now the property of the lessor in payment of anticipated or probable damages, and that it is a reasonable sum as liquidated damages; that from the nature of the contract, the subject-matter thereof, the difficulty in determining the amount of damages during so long a period, the consequences likely to flow from a breach thereof, and the circumstances surrounding the transaction, we are authorized to conclude that the parties intended the ten thousand dollars as liquidated damages accruing to the lessor in the event of a breach of the contract on the part of the lessee.

Notwithstanding the lessor promptly went into entire, exclusive, and uninterrupted possession of the entire leased premises, it is now his contention that the Chicago Investment Company of Mississippi has by its contract agreed that this sum shall stand as a guaranty already liquidated for all damages that may accrue to the end of the term. In other words, that he may have the property exclusively to his own use and purposes and also have this additional amount as rental. To state the proposition is to answer it.

The appellee has cited many cases which he urges as being similar in facts and controlling in principle, but it is our deliberate judgment, after examination of many of them, that the authorities so cited are not in point but in principle are against the contention. It is quite clear that parties may agree to liquidated damages and that

equity will recognize and enforce that agreement if it is reasonable and proper under all the circumstances of the particular case, but an agreement for a stipulation of a fixed sum as liquidated damages is not infallible and in all cases binding upon a court of equity. This agreement may always be examined, and if the court be of the opinion that it is a penalty and unreasonable it will not enforce the stipulation, notwithstanding the declaration therein, the court will look through the form to the substance.

The case of Longobardi v. Yuliano, 33 Misc. 472, 67 N. Y. S. 902, is a case where there was an express stipulation that the deposit was to be stipulated damages (liquidated), and was deposited to secure the payment of the rent under the terms of the contract. Likewise see all the cases cited by appellee, and especially the case of Central Trust Co. v. Wolf, 255 Mich. 8, 237 N. W. 29, 78 A. L. R. 843. In that case there was a specific deposit of the money with a third party to secure the performance of the terms, covenants, and conditions of the lease, not only to pay the rent as it became due, but to secure the performance of other conditions and covenants therein contained, and the third party was directed to pay to the lessor the three thousand dollars on the termination of the lease by default of the lessee. The principle of that case applied here is against appellee's contention.

Appellee also cites the case of Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 249, 46 L. Ed. 366, in which Judge White used this language: "The clause of the contract providing for the forfeiture of ten per centum on the amount of the contract price, upon failure to complete the work by a given day, cannot properly be regarded as an agreement or settlement of liquidated damages. The term 'forfeiture' imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract, or from an imperfect performance.

It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superinduced. Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation, it is never taken as such by courts of justice, who leave it to be enforced where this can be done in its real character, viz., that of a penalty.''

We quote this apt language for the purpose of showing how reluctant the courts are to accept even an express agreement fixing a specific amount as damages. The general rule adopted by the courts on this character of contracts is well summarized in 36 C. J., p. 302, section 1087, wherein it is said: ''The tenant's deposit being for specified purposes, as expressed in the lease, there is no right to have the deposit applied for other purposes. So a deposit made as security for rent alone is limited to that object, a deposit made to secure rent accruing under the lease cannot be applied to rent accruing after the termination of the lease, a deposit made and stipulated to be applied as rent for the last months of the term cannot be applied in payment of other rent when the tenant is in default, and the landlord cannot apply money deposited to pay rent to pay the cost of repairs, or subject the tenant to liability for the cost of repairs when not covered by the covenants of such tenant. The amount of rent which the landlord is entitled to retain out of money deposited as security for the payment of rent is ascertained by a consideration of the extent of the tenant's obligations under his covenants, and the extent of liability existing on the termination of the lease. In accordance with the agreement of the parties, the right to have the deposit applied to the purposes agreed upon may exist when the lease is terminated, or prior to that time, where the lease continues in existence, and the landlord may be justified in applying the deposit where a tenancy exists, although the written lease contemplated by the parties was not executed.''

Section 1084 of 36 C. J. provides that if the money de-

posited as security for the performance of tenant's covenants constitutes liquidated damages for the breach of such covenants, the landlord is entitled to retain the entire amount deposited, although it may be in excess of the actual damage sustained.

In the case ar bar we have determined that the lease was terminated, that the lessor thereupon went into possession, and that there was no provision in the contract that he might have the leased premises and the deposit in addition thereto. Unless it was so contracted it would be manifestly unfair to presume that damages would accrue, and that the parties intended to provide for such a contingency as here exists. They did not do so, and we are controlled, as are they, by the terms of their contract. As to the effect of a breach of the covenants in such a contract as this, see 36 C. J., p. 300, section 1083.

The principles which we have adopted are supported by many cases. In Caesar v. Rubinson et al., 174 N. Y. 492, 67 N. E. 58, 60, the court held that in a contract similar to this, which did not provide for liquidated damages, the landlord could not have the leased premises and the deposit money, and therein said: "It is difficult to see why he should be entitled to have the leased premises and the deposit at the same time." Also see Virginia Amusement Co. v. Mid-City Trust & Savings Bank, 220 Ill. App. 147; Yuen Suey v. Fleshman, 65 Or. 606, 133 Pac. 803, Ann. Cas. 1915A, 1072; Steel v. Thompson, 59 Cal. App. 191, 210 Pac. 430; Wilson v. Agnew, 25 Colo. App. 109, 136 Pac. 96; Adams v. Dunn, 64 Pa. Super. Ct. 303; Sutton v. Goodman, 194 Mass. 389, 80 N. E. 608. The latter case is directly in point.

We conclude, therefore, that viewing this contract as a whole the ten thousand dollar deposit had no reference to, or connection with, that which follows section 3 of the lease contract, as none of the contingencies provided for as to the ten thousand dollar deposit can now arise; the lessor having by his own act elected to take

possession of the property to the exclusion of the lessee. He might have allowed the lessee to remain in possession and have exhausted this ten thousand dollar deposit in the payment of rent as it accrued if he had so desired. He saw fit to take the property; he cannot take both under the terms of his contract. Therefore, we conclude that there is no agreement for liquidated damages for the payment of rent beyond the termination of the lease by the lessor, and that there is no provision in the contract for the application of the ten thousand dollars in the case now presented. Otherwise, in our opinion, the court below should have an accounting between the parties, under the rule announced here, adjusting the rights of the parties to the date of the termination of the lease.

Reversed and remanded.