**UNITED STATES of America,**
**Appellant,**
v.
**J. C. MARTIN LUMBER COMPANY**
**et al., Appellees.**

**J. C. MARTIN LUMBER COMPANY**
**et al., Appellants,**
v.
**UNITED STATES of America,**
**Appellee.**
**No. 16499.**

United States Court of Appeals
Fifth Circuit.
June 10, 1957.

---

Elizabeth Dudley, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty., Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., for appellant.

M. M. Roberts, Hattiesburg, Miss., John W. Backstrom, Leakesville, Miss., for appellees.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal and the cross-appeal are taken from a judgment entered in a suit involving the cutting of timber in De Soto National Forest, Wayne County, Mississippi, under two timber sale agreements between the United States, as the owner and seller of the timber, on the one hand, and one J. C. Martin, an individual, doing business under the name of J. C. Martin Lumber Co., as the purchaser.

The judgment, upon a finding that timber of the fair value of $11,000 had been wrongfully received by J. C. Martin Lumber Company, but that it was entitled to a credit of $10,172.04 on account of funds belonging to it which the government had in its possession, allowed plaintiff a net recovery of $827.68.

Upon a finding that because the timber had been wrongfully cut, the government had properly cancelled the contract, the district judge denied the defendant a recovery on its counterclaim for timber which it claimed it had paid for and had not been allowed to cut.

The sole question presented for review on the plaintiff's appeal, as thus stated by it, is:

"Whether the district court, having found that the purchaser of designated timber in a national forest was liable for timber wrongfully cut, erred in refusing to allow double the contract price as provided in the agreements for the cutting of undesignated timber."

Appellee, by their cross-appeal, present as their sole question, that the court erred in not entering judgment on their counter-claim.

It is thus evident that, though on the trial before the court much testimony was taken and many witnesses were heard on whether or not timber was wrongfully cut and to what extent defendants were liable therefor, the case here on appeal is in quite narrow compass, and its determination is dependent and will turn upon a proper construction of pertinent clauses of the timber con-

tracts and whether the judge's fact findings are or are not clearly erroneous and may or may not be set aside.

In support of its appeal, the government, while disputing the correctness of the district judge's finding that the defendants were not willful and knowing, but innocent, offenders against the contract, shows little concern with this finding. Its real complaint of the findings and conclusions is that, under the express terms of the contract, the defendant had agreed to pay for all timber cut in violation of the contract, double the commercial value and that, though the district judge found that timber had been wrongfully cut, he did not give judgment for it as the contract provided.

Its attack upon the judgment and its argument in support of the attack runs, therefore, not against the findings,—it apparently considers them sufficient, but against the conclusion of the judge on those findings that defendant should pay for the timber cut only the commercial rate specified in the agreement, rather than double that rate.

Pointing to the judge's statement in substance that under the contract timber cut which was not authorized would carry a price double that cut under the contracts, and if this timber had been unlawfully cut *by the lumber company*, or if the lumber company had knowingly received and used it with knowledge of its unlawful cutting, it would be liable for double the contract price, but that, since the company did not cut it under or by virtue of the contracts, it cannot be held for the penalty but is liable only for the fair market price of the timber lawfully received by it, the appellant insists that the court, in such findings and conclusions, draws a distinction which the contract does not make, and that its finding that timber of the fair market value of $11,000 had been wrongfully received required a judgment that the company should pay $22,000 for it.

The defendant and cross-appellant, while arguing vigorously that the district judge was wrong in finding under the evidence that Martin received any wrongfully cut timber, and that the judgment should be reversed because the findings are clearly erroneous, urges upon us that, assuming that the findings were correct, plaintiff would still not be entitled to recover more than was allowed, because the contract provisions for double pay were penalty provisions and not enforceable, and because under the judge's findings that Martin received the timber innocently and ignorant of its wrongful cutting, the double price clause could not be enforced against it.

In addition, it argues quite mistakenly, we think, that the contracts do not apply to timber deliberately and wrongfully cut but only to timber cut carelessly or negligently.

Upon its counter-claim, it contends, first, that the district judge did not pass upon the claim but in effect dismissed it for want of jurisdiction, and, second, that if he did pass upon it and dismissed it because of his view that the government had properly cancelled the contracts on account of the wrongful cutting of the timber, the findings and judgment were wrong because the findings of the court, that Martin was innocent of any intent to do wrong, prevented a construction of the contracts which would authorize their cancellation.

Since the contracts of November 21, 1949, and April 25, 1951, and their correct construction and application, are the determining factors in the decision, a statement of their provisions pertinent here is essential. These, common to both contracts, are:

(1) Provisions fixing the stumpage rates to be paid for timber cut and providing that payments of stumpage and other deposits shall be made in advance when called for by the stumpage officer in charge.

(2) Provisions for marking trees designated as merchantable timber to be cut, defining "merchantable" and providing that *only and all marked or designated trees shall be cut*.

The provisions critical here in the decision of the question posed by appellant

are contained in Clause 13 of the first, and Clause 5 of the second, contract, which in substance are the same unless, and this does not appear to us to be the case, the provision in the second contract, fixing the price at *"double the commercial rate specified on the reverse side of this agreement"* differs in substance as well as in words from that used in regard to the same matter in the first contract.

As stated in Clause 13, these provisions are:

"On the portions of the sale area on which felling *has been or is being done, marked or designated trees left uncut, and unmarked or undesignated trees which contain merchantable material and which are cut, injured through carelessness, or killed by fires* which the purchaser, his employees, contractors, or employees of contractors caused, or * * * could have prevented * * * shall be paid for at double the current price including stumpage and special deposits except slash disposal deposits fixed by the terms of this agreement, for the class of material said trees contain: *Provided, that such payment shall not release the purchaser from liability for any damage to the United States other than the value of said trees. The amounts herein specified shall be regarded as liquidated damages.* * * *" (Emphasis supplied.)

The provision in both contracts pertinent to the cross-appeal is in substance that failure to comply with any one of the conditions and requirements of the contract shall be sufficient cause for the termination of the agreement.

■ We consider first, to reject them, the contentions of the appellees and cross-appellants, that the fact findings: (1) that the defendant had received and made use of timber which had been cut

in violation of the contracts; and (2) that because this is so, the United States had rightfully terminated the contracts; were clearly erroneous. We reach this conclusion because, considering those findings in the light of the provisions of the contracts, the testimony as a whole, with its sufficiencies and its insufficiencies, its completenesses and its incompletenesses, to agree with defendants' contention would in effect put us in the position of ourselves becoming triers of the facts and judging for ourselves the credibility of each witness, the weight to be given to his testimony, and the conclusion of fact to be drawn from the testimony as a whole. Moreover, if we should undertake to do this, we think we should be bound to conclude not that the findings are contrary to, but that they are fully supported by, the evidence.

■ These matters disposed of, we come then to the point of main contention, whether the government is right in its position, that the fact finding, that marked timber of the commercial value of $11,000 was received by the defendant, compelled the conclusion that, under the terms of the contract, defendant was liable under the contracts for such timber cut not at its commercial value but at double thereof.

In support of this contention, the appellant presses hard upon us its specification of error No. 4, that the district judge erred in concluding that the provision for double the contract price for timber cut which had not been marked or designated for cutting was a penalty and, therefore, not enforceable.

Upon the settled principles, established in the cases which appellant and appellees cite,[1] which govern the construction of contracts of this nature, we think that, though denomiated one for "liquidated damages", the clause was in fact one for a penalty. This we think plainly appears

1. United States v. LeRoy Dyal Co., 3 Cir., 186 F.2d 460; Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L. Ed. 32; Chicago Inv. Co. of Mississippi v. Hardtner, 167 Miss. 375, 148 So. 214; Massman Construction Co. v. City Council, 5 Cir., 147 F.2d 925; to which we add a reference to the treatment of "Liquidated Damages and Penalties", 15 A.J. Damages Secs. 240 to 256, pp. 671 to 689, with particular reference to Secs. 250 and 255.

on the face of Clause 13, which, without discrimination, provides the same penalty for leaving marked trees uncut as for cutting unmarked trees, and, as to trees injured through carelessness, provides the same penalty without regard to the extent in each case of the injury, and further provides that the double payment when made shall not release the purchasers from liability for any damage to the United States other than the value of said trees. The fact that the clause goes on to say "The amount herein specified shall be regarded as liquidated damages" is of no significance, for the courts have uniformly held that it is not the name given to it but what it really is which is determinative of whether an amount named is or is not a penalty.

We find no error in the judgment. It is affirmed.