WOOD NAVAL STORES EXPORT ASSN. *v.* GULF NAVAL
STORES COMPANY.

April 5, 1954

No. 38977　　　　　59 Adv. S. 70　　　　　71 So. 2d 425

*T. J. Wills,* Hattiesburg; *Mize, Thompson & Mize,* Gulfport; *Charles Kohlmeyer, Jr.,* New Orleans, Louisiana, for appellant.

654

*Morse & Morse,* Gulfport; *Powell, Albritton & Albritton,* Andalusia, Alabama, for appellees.

KYLE, J.

This case is before us on appeal by Wood Naval Stores Export Association, defendant in the court below, from a judgment of the Circuit Court of Harrison County ren-

dered in favor of John T. Latimer, Mrs. Julia Latimer, Louis L. Latimer, J. Alton Latimer, Ray A. Latimer, Walter F. Latimer and Mrs. Julia Priscilla Latimer Poole, doing business as Gulf Naval Stores Company, plaintiffs in the court below, for the principal sum of $8,668.13, with interest thereon from April 23, 1952.

The record shows that the Wood Naval Stores Export Association is an association formed under Sections 61-65, Title 15, U. S. Code Annotated, commonly known as "The Webb-Pomerene Act," and that its offices are located in the City of Gulfport. The association was formed during the year 1947, for the sole purpose of engaging in export trade. The association was originally composed of the following members: Alabama Naval Stores Company, a corporation domiciled in Mobile, Alabama; Continental Turpentine and Rosin Corporation, domiciled in Laurel, Mississippi; Delta Pine Products Corporation domiciled in Covington, Louisiana; Dixie Pine Products Company, a corporation domiciled in Hattiesburg, Mississippi; Southern Naval Stores Division of Leach Brothers, Inc., a Wisconsin corporation having its principal place of business in Columbia, Mississippi; and Gulf Naval Stores Company, of Gulfport, Mississippi, a partnership composed of John T. Latimer, Mrs. Julia Latimer, Ray F. Anderson, Mrs. Phala Anderson, V. A. Anderson and Mrs. Lula W. Anderson. All of the parties to the agreement were producers of wood naval stores.

The formal Articles of Association executed by the members of the association were dated May 15, 1947. The term "wood naval stores," as used in the articles, was deemed to include only wood rosin, wood turpentine, pine oil and dipentene. The powers and purposes of the association were limited to the exportation of wood naval stores from the United States to foreign countries. Article 5 expressly provided that: "Unless terminated by mutual consent of the parties hereto, this Agreement

shall continue in force until the expiration of ten (10) years from the date of signing hereof.''

In Article 6 the members bound themselves as follows: ''Each member of the Association will not engage in any form of export activity of wood naval stores other than through the Association, and will turn over to the Association all inquiries and communications which he may receive relative to such export business.''

In Article 7, provision was made for the pledging by each member for export by the association during each quarter year of a stated number of drums of wood rosin, a stated number of gallons of wood turpentine, a stated number of gallons of pine oil, and a stated number of gallons of dipentene, ''the amounts pledged not to be less than twenty-five per cent (25%) or to exceed sixty per cent (60%) of his capacity computed as herein before provided.'' Pledges thus made were to be binding upon the members. The association was authorized to establish standards of quality for wood naval stores to be exported; and the association was obligated to make every effort to dispose of the total amount of wood naval stores pledged for export; and if the association was unable to dispose of the entire pledge quotas for export, the members were to be advised of that fact. Payment for the wood naval stores exported during each calendar quarter was to be made to each member on the basis of the association export sales price of each grade of each product sold for export during the quarter.

Article 8 provided that if any member should violate the terms of the agreement and export wood naval stores products directly, ''the Board of Directors of the Association may, in its discretion, impose a fine upon the member whose goods are thus exported. Such fine may be in an amount not to exceed five dollars ($5.00) per drum of wood rosin and 25¢ per gallon of wood turpentine or pine oil or dipentene thus exported.''

The general management of the business of the association was vested in a board of directors. Each mem-

ber of the a sociation was entitled to one representative
on the board. In Article 14 it was expressly provided
that the agreement might be amended by two-thirds ma-
jority vote of the members; and under Article 15 any
member of the association might withdraw from the asso-
ciation, if such withdrawal were approved by a majority
of the board of directors. Article 16 provided that:
"Each member shall maintain a five thousand dollar
($5,000.00) deposit with the association to insure his
faithful performance all the provisions of this Agree-
ment, and shall, within fifteen (15) days after written
notice from the Association, make additional deposits to
cover any deficiency resulting from fines or assess-
ments."

The expenses of the association were to be borne by
the members in proportion to the computed plant capac-
ity, of each of the members.

The plaintiffs in their declaration alleged that the
partnership doing business as Gulf Naval Stores Com-
pany at the time the above mentioned association was
organized was dissolved by mutual consent of the part-
ners on May 31, 1950, and that the assets of the partner-
ship were conveyed to John T. Latimer and Mrs. Julia
Latimer, who thereafter carried on the business as part-
ners under the name of Gulf Naval Stores Company un-
til January 1, 1951, when a new partnership agreement
was entered into by the plaintiffs; and that John T.
Latimer and Mrs. Julia Latimer then conveyed to each
of the plaintiffs, who composed the new partnership, an
undivided one-seventh interest in the land and personal
property owned by the partnership, including a deposit
of $5,000 made by the former partnership with the Wood
Naval Stores Export Association in 1947 in compliance
with the provisions of the above mentioned Articles of
Association.

The plaintiffs alleged that they were not members of
the Wood Naval Stores Export Association, and that the
$5,000 deposited by the former partnership with the asso-

ciation in 1947 was the property of the plaintiffs and that demand had been made upon the association for the payment of said $5,000 to the plaintiffs, but the association had refused to pay the same to the plaintiffs. The plaintiffs also alleged that a shipment of naval stores products had been made by the plaintiffs through the facilities of the association during the month of April, 1952, for convenience, and that the association had received the proceeds of the shipment amounting to $3,668.13, and had refused to pay over to the plaintiffs the amount thus received. The plaintiffs therefore demanded judgment against the association for the amount of $8,668.13.

The defendant in its answer denied that the plaintiff partnership was not a member of the association; and the defendant denied that the plaintiff partnership was entitled to recover the $5,000 deposit mentioned above, or the additional sum of $3,668.13, which represented the proceeds of the shipment of naval stores products made by the plaintiff through the facilities of the association in April, 1952. The defendant in its answer averred that the plaintiff partnership was still a member of the association, and would continue to be a member until May 15, 1957, and that the changes in the membership of the Gulf Naval Stores Company partnership in no way affected the terms or conditions of the membership of the Gulf Naval Stores Company in the association. The defendant also averred in its answer that the plaintiffs, after the changes in the membership of the partnership had taken place, had continued to participate in the administration of the affairs of the association, and had accepted the benefits of the association, and that the plaintiffs were estopped from claiming that they were not bound by the articles of agreement. The defendant admitted that the shipment of naval stores products referred to in the plaintiffs' declaration had been made by the plaintiffs, through the association, and that the

money received on account of said shipment amounting to $3,668.13 had not been paid to the plaintiffs. But the defendants denied that the plaintiffs were entitled to recover the same because of penalties incurred on account of the plaintiffs' violation of the articles of association.

The case was tried at the January 1953 term of the court. The plaintiffs introduced in evidence the articles of association of the Wood Naval Stores Export Association; also the articles of partnership of the Gulf Naval Stores Company dated June 4, 1947, and the agreement for the dissolution of the partnership dated May 31, 1950, and the deed of conveyance of real property and the bill of sale of personal property executed by the members of the late partnership to John T. Latimer and Mrs. Julia Latimer on June 27, 1950, conveying to them the real and personal property of the late partnership, including the raw materials and merchandise on hand and accounts receivable; also the articles of partnership entered into between John T. Latimer and Mrs. Julia Latimer, under the partnership name of Gulf Naval Stores Company, dated June 21, 1950; and the articles of partnership entered into by the plaintiffs, under the name of Gulf Naval Stores Company, on January 1, 1951, and amendments thereto dated March 22, 1952, and the instruments of conveyance executed by John T. Latimer and Mrs. Julia Latimer to the members of the present partnership, conveying to each of them an undivided one-seventh interest in the partnership assets. The plaintiffs also introduced in evidence a statement of the account of Wood Naval Stores Export Association with the Gulf Naval Stores, dated June 10, 1952, covering the shipment of the naval stores products referred to in the last paragraph of plaintiffs' declaration and showing a balance due the Gulf Naval Stores Company in the sum of $3,668.13. It was also shown that the plaintiffs had made demand upon the defendant for the $5,000 deposit mentioned in the plain-

tiffs' declaration, and the said sum of $3,668.13, and that payments of the said amounts had been refused.

E. L. Murphey, Jr., who had served as secretary of the Wood Naval Stores Export Association since February 15, 1947, and Fred W. Chrestman, Jr., Vice-President of the Continental Turpentine Rosin Corporation, testified as witnesses for the defendant. Murphey testified that the association handled for its members only products intended for export trade, and that the Newport Industry, Incorporated, whose general offices were located in New York, acted as exclusive sales agent for the association. Orders received by the Newport Industry, Incorporated, for the association were sent to the Gulfport office of the association. The orders were then parceled out among the members of the association according to the production capacity of each plant. The orders covered only the commodities mentioned in the articles of association. Murphey testified that the Gulf Naval Stores Company became a member of the association and signed the articles on May 15, 1947. Its first representative on the board of directors was V. A. Anderson. Anderson resigned about June 1, 1950, and on June 22, 1950, J. T. Latimer notified the association by letter that the Gulf Naval Stores Company was owned solely by J. T. Latimer and Mrs. J. T. Latimer, and that Louis L. Latimer had been designated as the company's representative on the board of directors, with E. S. Taylor as alternate representative. Louis L. Latimer thereafter attended the meetings of the board as the company's representative, up to and including June 6, 1951, and participated actively in the proceedings of the board. In February 1951, E. S. Taylor attended a Naval Stores Industry Conference in Washington, D. C., and sent in his bill for expenses in the sum of $178.63; and the bill was paid by the association. The Gulf Naval Stores Company continued to pay its dues to the association until April 1, 1952. The company continued to participate in the export of naval stores

products by the association up to April 7, 1952; and the records of the association showed that the total volume of business done by the company through the association from January 1, 1951, to April 7, 1952, amounted to $247,938.28.

Murphey testified that the officers of the association learned during the early summer of 1952 that the Gulf Naval Stores Company was shipping rosin products in export trade through agencies other than the Wood Naval Stores Export Association. Drums of wood rosin were seen going out of the port of New Orleans with Gulf Naval Stores Company labels on them. Murphey saw the drums himself. Detectives were employed by the association to make an investigation, and upon the basis of the detective's report and the other information at hand the board of directors at a special meeting on July 15, 1952, made a finding that 460 drums of F. F. Wood Rosin produced by the Gulf Naval Stores Company had been exported by the company in violation of the articles of association. The board thereupon imposed a fine of $5 per drum on the company, amounting to $2,300, as provided in Article 8 of the articles of association. The board also ordered that all monies of the Gulf Naval Stores Company held by the association be retained pending further investigations into other violations of the articles. A copy of the resolution was forwarded to the Gulf Naval Stores Company.

Fred W. Chrestman, Jr., corroborated Murphey's testimony concerning the attendance of Louis L. Latimer as a member of the board of directors of the association after the resignation of V. A. Anderson in 1950. Chrestman also corroborated Murphey's statement concerning the information which the board of directors had received relative to the shipment of the 460 drums of wood rosin in violation of the articles of association, and concerning the imposition of the fine of $2,300 mentioned above. Chrestman stated that the shipment of the 460 drums of rosin mentioned above constituted the only

violation of the association agreement that the asso-
ciation knew anything about. Chrestman also testified
concerning the fall in prices of naval stores products
during the year. He attributed a part of the dollar
decline in market values of naval stores products to the
action of the Gulf Naval Stores Company in shipping
such products in violation of the association agreement.

The plaintiffs offered no testimony in rebuttal.

At the conclusion of the testimony the court instructed
the jury to return a verdict for the plaintiff for the
full amount sued for.

Two questions are presented for our decision of this
appeal: (1) Whether the appellee, Gulf Naval Stores
Company, was a member of the Wood Naval Stores
Export Association at the time this suit was instituted;
and (2) whether the "fine" which the board of direc-
tors of the association is authorized to impose under the
provisions of Article 8 of the articles of association is
to be treated as liquidated damages or as a penalty.

In view of the facts disclosed by the testimony, we
do not think that the Gulf Naval Stores Company ceased
to be a member of the Woods Naval Stores Export Asso-
ciation after the dissolution of the original partnership
on May 31, 1950, when John T. Latimer and his wife,
Mrs. Julia Latimer, acquired the interest of the other
partners in the business and assets of the partnership.
Neither do we think that the Gulf Naval Stores Company
ceased to be a member of the association on January
1, 1951, when Mr. and Mrs. Latimer conveyed a one-
seventh interest in the business and assets of the part-
nership to Louis L. Latimer, J. Alton Latimer, Ray Lati-
mer, Walter F. Latimer and Mrs. Julia Priscilla Latimer
Poole.

It is not necessary for us to determine in this case
whether the membership of the Gulf Naval Stores Com-
pany in the association could have been terminated by
John T. Latimer and Mrs. Julia Latimer, if they had
desired to terminate the same, immediately after the

Andersons retired from the partnership on May 31, 1950, or what the legal effect of an attempted withdrawal of the Gulf Naval Stores Company from the association at that time would have been. It is clear from the record in this case that John T. Latimer and Mrs. Julia Latimer, the continuing partners, did not elect to treat the dissolution of the original partnership as having the effect of terminating the Gulf Naval Stores Company membership in the association. The testimony on the contrary shows that John T. Latimer immediately notified the association of the change in the personnel of the partnership, and the continuing partners immediately designated Louis L. Latimer as their representative on the board of directors of the association. Louis L. Latimer thereafter attended the meetings of the board of directors, and continued to attend the meetings until June 6, 1951, and participated in the proceedings of the board of directors during that time. The Gulf Naval Stores Company continued to pay its dues to the association until April 1, 1952, and continued to make use of the facilities of the association for the export of its naval stores products.

The appellees, having elected to continue as members of the association, and having availed themselves of the advantages which the association had to offer, were estopped to deny their membership in the association, or to claim that they were no longer bound by the articles of agreement because of the changes that had been made in the partnership personnel since 1947.

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith. A party cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations." 31 C. J. S., p. 347, Estoppel, par. 109a; and cases cited.

The appellees having elected to retain their membership in the association were bound by the articles of agreement under which the business of the association was carried on. Article 5 of the articles of association provides that, ''Unless terminated by mutual consent of the parties hereto, this Agreement shall continue in force until the expiration of ten (10) years from the date of signing hereof.'' Article 16 of the articles of association expressly requires that each member shall maintain a $5,000 deposit with the association to insure its faithful performance of all of the provisions of the agreement. The appellees were therefore not entitled to recover in this action the $5,000 deposited by them under the provisions of Article 16.

The next question that we have to consider is, whether the ''fine'' which the board of directors imposed upon the appellees under Article 8 of the articles of association is to be treated as liquidated damages or as a penalty.

The appellant argues that the provisions of Article 8 which authorize the imposition of a ''fine'' upon any member whose goods are exported in violation of the articles of agreement, should be treated as an agreement made in advance by the parties for the assessment of liquidated damages, and not as an agreement for the imposition of penalties. The appellees contend that Article 8 undertakes to authorize the imposition of a penalty, and that the article is therefore invalid, and that ''fines'' imposed thereunder are illegal.

██ In a case of this kind nomenclature is not controlling, but the intention of the parties is the important, if not the conclusive factor. Massman Construction Company v. City Council of Greenville, Mississippi, 147 F. 2d 925, 927. The word ''fine'' has a variety of meanings. The use of the word in a cooperative marketing agreement such as we have here does not necessarily mean that the amount stated is to be exacted as a punishment for

wrongdoing. The word may mean "a sum paid by way of composition or settlement." Webster's New International Dictionary, Second Edition. In the case of Goodman v. Durant Building and Loan Association, 71 Miss. 310, 14 So. 146, the Court held that, under the general law and without a special statute, building and loan associations may be incorporated, with customary and appropriate powers not inconsistent with law, the vital principle being the compounding of monthly receipts for the mutual benefit, with the imposition of "what is called a fine (merely an agreed sum as liquidated damages)" for every default in payment; and that members may bind themselves by such a scheme, and will be held to the performance of what they have agreed.

"The use of the word 'forfeit' or 'forfeiture' does not necessarily imply a penalty, for an amount in an instrument designated as such may be properly construed as, liquidated damages, as where it seems clear that such was the intention of the parties or where there would be great difficulty in proving the actual damages. In the determination of whether or not the provisions for a forfeiture is a penalty or liquidated damages, the whole contract will be looked into, and if that does not settle the intention of the parties, evidence outside the contract will sometimes be admitted." 15 Am. Jur. p. 680, Damages, par. 248.

In the case of Shields v. Early, 132 Miss. 282, 95 So. 839, the Court in its opinion said: "The fact that the parties to a contract used the words therein 'penalty' or 'liquidated damages' may prima facie be supposed to mean what they say, yet the expression used is not conclusive. The court should ascertain whether the payment stipulated was in truth a penalty or liquidated damages. The courts lean in favor of an interpretation that such a stipulation is a penalty. The essence of a penalty is a payment of money stipulated as in terrorem of the party breaching the contract; while the essence of liquidated damages 'is a genuine covenanted pre-estimate of

damages.' Whether a sum stipulated is a penalty or liquidated damages is a question of construction 'to be decided upon the terms and inherent circumstances of each particular contract, judged as at the time of the making of the contract, not as at the time of the breach.' "

In the case of Brown v. Staple Cotton Cooperative Association, 132 Miss. 859, 96 So. 849, the Court had under consideration a cooperative marketing association agreement. The contract provided that the grower should pay to the association for all cotton sold or marketed by him other than in accordance with the terms of the agreement the sum of 10 cents per pound as liquidated damages for the breach of the contract. The appellant contended that the sum stipulated to be paid was a penalty and not liquidated damages, and was therefore unenforceable. But the Court in its opinion holding that the association was entitled to recover the damages stipulated for, said: "On account of the difficulty of ascertaining anything like an accurate estimate of the damages which appellee association would suffer on account of a breach of the contract by a member, a sum agreed upon, if reasonable, will be upheld as liquidated damages."

In the case of Tobacco Growers' Cooperative Association v. Jones, 185 N. C. 265, 117 S. E. 174, 33 A. L. R. 231, the Court said, "an agreement for liquidated damages will be held valid, 'in the absence of any evidence to show that the amount of damages claimed is unjust or oppressive, or that the amount claimed is disproportionate to the damages that would result from the breach or breaches of the several covenants of agreement.' " See also, Bradshaw v. Millikin, 173 N. C. 432, 92 S. E. 161, L. R. A. 1917E 880; Lee v. Clearwater Growers' Association, 93 Fla. 214, 111 So. 722; Lennox v. Texas Cotton Cooperative Association, (Tex. Commission of Appeals), 55 S. W. 2d 543.

The appellees in the case that we have here offered no proof to show that the amount of the "fine" pro-

vided for in Article 8 of the articles of association was unjust or oppressive, or that the amount claimed was disproportionate to the damages resulting from the appellees' breach of the covenants of the agreement. From the testimony of Fred W. Chrestman, Jr., Vice-President of the Continental Turpentine Rosin Corporation, it is clear that the amount of loss or harm to the members of the association caused by the appellee's violation of the terms of the agreement was both uncertain and difficult of estimation. Under these circumstances we see no reason why the sum stipulated in Article 8 should not be considered as "a genuine covenanted pre-estimate of damages" sustained as a result of the appellees' violation of the terms of the agreement. Shields v. Early, supra; Brown v. Staple Cotton Cooperative Association, supra.

The conclusion thus stated finds support not only in the decisions of our own Court cited above, but also in the following statement of the textwriter in A. L. I., Restatement of the Law, Contracts, Section 339:

"c. Where the amount of loss or harm that has been caused by a breach is uncertain and difficult of estimation in money, experience has shown that the estimate of a court or jury is no more likely to be exact compensation than is the advance estimate of the parties themselves. Further, the enforcement of such agreements saves the time of courts, juries, parties, and witnesses and reduces the expense of litigation. In such cases, if it is not shown that the principle of compensation has been disregarded, the liquidation by the parties is made effective."

The appellees say that, if the appellant intended to claim that the "fines" which might be imposed under Article 8 were to be treated as liquidated damages, to be offset against the appellees' demands, the appellant should have filed a counterclaim. But the appellant did interpose such counterclaim as a defense to the appellees' demands. It is true that the details of the appel-

lant's counterclaim were not definitely stated in the answer. But the appellees filed no motion for a bill of particulars; neither did they ask that the answer be made more specific. The appellant's proof showed, however, that a copy of the resolution of the board of directors, reciting the finding of the board that 460 drums of wood rosin had been shipped by the Gulf Naval Stores Company in export trade in violation of the articles of association, and that the board had imposed a ''fine'' of $5 per drum on the company, had been mailed to the company after the resolution was adopted; and proof of such shipments was made by Murphey and Chrestman. The appellees were fully apprized of the appellant's defense, and the question of the validity of Article 8 upon which the appellant's counterclaim was based was fully presented in the lower court and has been fully argued on this appeal. Whether the counterclaim should be allowed or disallowed depends upon our answer to the question whether the sums stipulated in Article 8 should be regarded as liquidated damages or a penalty. We think the sums stipulated in Article 8 should be regarded as liquidated damages.

The appellees were not entitled to a peremptory instruction for the full amount sued for. The appellees were not entitled to recover in their present action the $5,000 deposited by the Gulf Naval Stores Company under the provisions of Article 16. That deposit was made for a special purpose, and the association is entitled to retain the deposit under the terms of the articles of agreement until the deposit is released in accordance with the articles of agreement. The appellant's counterclaim for damages on account of the shipment of the 460 drums of wood rosin in violation of the articles of the association, in the amount of $2,300, should have been allowed, as an offset to the appellee's demand for the $3,668.13; and the jury should have been instructed to

return a verdict in favor of the appellees for the sum of $1,368.13.

The judgment of the lower court is therefore reversed, and judgment will be entered here dismissing without prejudice the appellees' claim for the recovery in this suit of the above mentioned $5,000. Judgment will also be entered here in favor of the appellees for the sum of $1,368.13, being the amount of the appellees' claim for $3,668.13, less the sum of $2,300 allowed as an offset against said claim, together with interest thereon from April 23, 1952.

Reversed and judgment rendered.

All Justices concur.