WOOD NAVAL STORES EXPORT ASSN. *v.* LATIMER, et al., d/b/a GULF NAVAL STORES COMPANY

No. 40282 November 5, 1956 90 So. 2d 379

198

*Mize, Thompson & Mize,* Gulfport; *Chas. Kohlmeyer, Jr.,* New Orleans, La., for appellant.

*Dan M. Russell, Jr.,* Bay St. Louis; *Morse & Morse,* Gulfport, for appellees.

ETHRIDGE, J.

The issue is whether the chancery court erred in refusing to require defendants to answer interrogatories in the bill of complaint. We think it did. The suit originated in the Chancery Court of Harrison County. Complainant sought to enjoin defendants, John T. Latimer and others, a partnership doing business as Gulf Naval Stores Company, from violating a cooperative export marketing contract made by the defendants with complainant, an association of seven producers of wood naval stores, organized under the Webb-Pomerene Act, 15 U. S. C. A., Sections 61-65; to obtain discovery from defendants, in response to interrogatories propounded in complainant's bill, concerning the sales of such products by defendants in violation of the articles of association; and to recover liquidated damages from defendants for such breaches of contract.

*First.* This is the second case which has reached this Court concerning the contract creating the Association. It was made on May 15, 1947, for a period of ten years. Its details are fully set forth in Woods Naval Stores Export Association v. Latimer, 71 So. 2d 425 (Miss. 1954). In brief, the Association was created for the sole purpose of engaging in export trade. The several parties to the agreement were producers of wood naval stores, such as wood rosin and turpentine. The defendants as partners were parties. Each member of the Association agreed not to engage in any form of export activity of wood naval stores other than through the Association, but would maintain a $5,000 deposit with the Association to insure faithful performance of the agreement. Article 8 provided: ''Should any wood naval stores produced by any member be exported by any member, agent, association, or business, other than the Association, the Board of Directors of the Association may, in its discretion, impose a fine upon the member whose goods are thus exported. Such fine may be in an amount not to exceed five dollars ($5.00) per drum of wood rosin and 25¢ per gallon of wood turpentine or pine oil or dipentene thus exported.''

The first suit was brought against the Association in July 1952 by the present defendants as partners in Gulf Naval Stores Company, in the Circuit Court of Harrison County. Plaintiffs alleged they were no longer members of the Association, since the partnership as constituted when the 1947 contract was entered into had been dissolved. The declaration sought to recover the $5,000 deposit and the sum of $3,688.13, which represented the proceeds of shipments of naval stores products made by plaintiffs through the Association. The Association, defendant in that suit, filed a counterclaim seeking to recover liquidated damages of $5 per drum of wood rosin shipped by plaintiffs in violation of the contract. The circuit court gave a peremptory instruction for plaintiffs, but this Court reversed that judgment, and held

that (1) Gulf Naval Stores Company was a member of the Association at the time the suit was instituted, and (2) the "fine" which the board of directors of the Association was authorized to impose under the provisions of Article 8 of the Articles of Association was valid as liquidated damages, and not as a penalty. Hence it was held that plaintiffs were not entitled to recover the $5,000 deposit made under the provisions of the contract, since the contract was still in effect; that they were entitled to recover $3,668.13 owed them by the Association for shipments made through the latter, but that this amount should be offset by liquidated damages of $2,300 owed the Association by plaintiffs. So plaintiffs, doing business as Gulf Naval Stores Company, were granted a judgment for the difference, $1,368.13.

*Second.* The present bill of complaint in chancery was filed on January 7, 1955. In brief, it averred the facts outlined above concerning the articles of association, and the decision of this Court in the circuit court litigation. The bill further alleged that Gulf Naval Stores Company had deliberately and intentionally violated the Association agreement and also the exclusive marketing agreement made under it by the Association with Newport Industries, Inc., by shipping in export trade, other than through the Association, wood naval stores. The bill charged that the extent of defendants' violations of the Association's contract, namely, the number and quantity of shipments of these commodities, was unknown to complainant and was wholly and peculiarly within the knowledge of defendants; that demand had been made upon defendants for an inspection of their books and for this information, but defendants refused these requests; that before and after the decision of the Supreme Court in the first suit on April 5, 1954, and up to the time of the filing of this action, January 7, 1955, defendants have exported wood naval stores in violation of their contract. Notice was given to defendants of a meeting of the board of di-

rectors of the Association on November 26, 1954. At that meeting evidence was produced of breaches of contract by defendants, and the board under Article 8 imposed liquidated damages upon defendants in the amount of $5 per drum for wood rosin shipped by defendants in violation of the articles of association.

The bill charged that damages received by complainant already amount to a sum in excess of $100,000, the exact amount is not within the possession of complainant, but is wholly, completely, and peculiarly within the knowledge of defendants, who have refused to divulge any information in regard to such shipments. It further averred that complainant was entitled to a discovery from defendants and an answer under oath as to the exact amount of wood rosin shipped by defendants other than through the Association. The bill had attached to it twenty interrogatories designed to elicit the facts as to such shipments in violation of the contract. The bill prayed for a discovery, an answer to the interrogatories, an accounting as to such shipments, a decree in favor of the complainant for liquidated damages at the rate of $5 per drum of wood rosin so shipped, and an injunction restraining defendant from violating the Association's contract until its expiration on May 15, 1957.

In addition to the interrogatories, the bill of complaint had attached to it as exhibits the Articles of Association, the exclusive marketing contract between the Association and Newport Industries, Inc., copies of notices given defendants of the meeting of the board of directors of the Association on November 26, 1954, and the minutes of this meeting. These minutes reflected that the board heard reports from several sources of violations of the articles by defendants, and after consideration the board assessed liquidated damages in the amount of $5 per drum of wood rosin upon Gulf Naval Stores Company in accordance with Article 8. Other exhibits included a demand upon defendants for full information as to ship-

ments in violation of the contract, a refusal by defendants to do so, and copy of defendants' advertisement in a trade magazine designating as their exclusive export selling agent a company other than Newport Industries, Inc.

██ █ The defendants filed a special demurrer to the bill, pleading res judicata in the first suit and election of remedies. This was properly overruled. Assuming but not deciding that defendants' cross-appeal from that action was properly taken, the cross-appeal has no merit. Defendants' answer also pleaded res judicata because of the judgment in the first suit, election of remedies by complainant, that their partnership as presently constituted was not a party to the Association's articles and and not bound by them, and that this suit was an attempt to impose a penalty, fine or forfeiture. Defendants denied that they were parties to or bound by the Articles of Association. They admitted they refused to allow complainant to inspect their books with reference to their export shipments of wood naval stores, and refused to give complainant that information. Defendants admitted that they are exporting wood naval stores through agencies other than the Association and Newport Industries, Inc., and that they knew to whom they sold goods in export trade. They denied that complainant was entitled to any discovery or answer under oath to the interrogatories propounded in the bill of complaint. The sole reason assigned was that defendants could not be compelled to disclose any facts whereby any alleged penalties, fines or forfeitures under Article 8 of the Articles of the Association could be imposed upon them. For that reason defendants refused to answer the interrogatories. In other words, defendants admitted that they were violating the Association's contract, but refused to answer the interrogatories, for the same reason which was decided against them by this Court in 71 So. 2d 425, in which it was held that Article 8 provided for liquidated damages rather than fines and penalties. ██ █ The proper procedure

was to move to suppress the interrogatories, rather than to refuse to answer. Morrison v. Guaranty Mortgage and Trust Company, 191 Miss. 207, 228, 199 So. 110 (1941).

Thereafter complainant filed a motion to grant it a decree pro confesso against defendants, or, in the alternative, to require defendants forthwith to answer under oath the interrogatories. The chancery court overruled this motion. The reason given was that the bill did not allege that complainant had made a diligent effort "to assemble a great mass of evidence touching the amount, value, destination and other material matters which, it is reasonable to assume, could have been furnished by these numerous dealers in the export trade being conducted on such a vast scale as is charged in the bill. It is no answer to suggest that such an effort might not have yielded all the information desired; but if it might have resulted in a discovery of an appreciable amount of these vast shipments which complainants were then seeking to recover, the complainants should have exercised due diligence and reasonable effort to ascertain such information before resorting to the imposition of penalty provided for in Section 8 of the 'General Agreement' ''. The Association was granted an interlocutory appeal from the order overruling its motion for a decree pro confesso, or in the alternative, to compel an answer to the interrogatories. The question is whether the chancery court was in error in overruling appellant's motion.

█ █ █ *Third*. The power to enforce discovery is one of the original and inherent powers of a court of equity. 17 Am. Jur., Discovery and Inspection, Section 2. It should be interpreted and applied liberally in order to promote its salutary purpose of obtaining a full disclosure of all of the facts prior to decision. The Mississippi statutes and decisions fully recognize these principles. Both the bill and cross-bill may contain special interrogatories to the defendant. Code 1942, Sections 1284, 1296. Code Section 1291 requires a defendant to answer fully all of the

allegations of the bill. Hence "a bill performs the two-fold function of a pleading and of an examination of the defendant." Griffith's Miss. Chancery Practice (2nd Ed. 1950), Section 183, p. 170, states: "The special interrogatories are designed to extend to a more intimate discovery of details and to a more specific searching out of the particulars of fact and circumstance, or, as expressed by one case, 'the bill may be accompanied by exhaustive and searching interrogatories directed to each and all the defendants requiring them to disclose fully and minutely their several connections with the matter,' and so long as confined to the relevant matters averred or charged in the bill the interrogatories must be answered fully and without evasion."

The same text in Section 362 says: "when the bill is accompanied by special interrogatories the defendant shall answer each of them not only fully, positively, clearly and directly as he is required to answer the averments of the bill, but even more so, in that he must answer them minutely, and shall answer not only of his knowledge but also as to his knowledge and belief. The answer to an interrogatory must have all the precision and detail called for by the interrogatory, to the full extent that the allegations and charges of the bill make them relevant, and by relevancy in this connection is meant not only those matters which would directly prove or disprove the bill but also all those matters which will tend to prove it, or to disprove a charge defense, and if a defendant, instead of answering an interrogatory in full, interpose an excuse for not so doing, he must state the facts constituting the excuse and state them in full."

With reference to the enforcement of these requirements, Code Section 1297 provides that "the complainant, instead of taking a decree pro confesso, may obtain from the chancellor an order for an attachment . . . to compel such defendant to answer." And Section 1298 states, "Any defendant attached for the purpose of coercing

an answer, who may refuse to answer, shall be committed to prison there to remain until he do answer." Judge Griffith observes that this remedy is rarely resorted to in actual practice. The usual course is to proceed to have the bill declared as confessed. Griffith, ibid., Section 258.

■■ On the other hand, discovery may not be required of matters which would impute a crime to the defendant or which would subject him to a criminal penalty. Griffith, ibid., Section 430; W. T. Rawleigh Co., Inc. v. Hester, 190 Miss. 329, 340, 200 So. 250 (1941). However, an objection to answering a prayer for discovery or interrogatories is not valid where the answer would not subject defendant to a criminal penalty, fine or forfeiture. Shumpert v. Lee County, 197 Miss. 513, 526, 20 So. 2d 82 (1944). For that reason, Bailey, State Tax Collector v. Muse, 85 So. 2d 918 (Miss. 1956), is not in point. This Court held in 71 So. 2d 425, that the provisions of Article 8 of the Articles of Association constitute an agreement between the parties as to liquidated damages, and not fines and penalties.

■■ The chancellor held that appellant's bill does not reflect that appellant exercised diligence in obtaining whatever information might be available to it, if any, at the three seaports from which defendants admittedly shipped the wood naval commodities. However, defendants' answer admitted that their records reflect to whom they shipped naval stores, the quantities so shipped, and other details. The general rule is that the bill must allege (1) the existence of a good cause of action, (2) the necessity and materiality of the facts sought, (3) the defendants' knowledge and the complainant's ignorance of such facts, and (4) diligence on the part of the complainant to secure the information sought. 27 C. J. S., Discovery, Section 11. In this latter respect, the bill must aver that the facts are not within complainant's knowledge, or within reasonable reach of him. In other words, the bill "must show that the matters sought are not within the

reasonable reach of the complainant." City of Hattiesburg v. Cobb Brothers Construction Co., 174 Miss. 20, 26, 163 So. 676 (1935); Griffith, ibid, Section 429. These criteria are particularly applicable to a "pure" bill of discovery, in which there are no other grounds for equity jurisdiction. Here complainant is seeking also an injunction and damages.

■■ ■ This bill comes clearly within these requirements, which are relevant in this case. Discovery by interrogatories can be maintained to discover matters concerning which complainant does not have the same means of information as defendant. Miller v. Klingman, 156 Miss. 795, 801, 126 So. 838 (1930). ■■■ The facts sought to be obtained by appellant lie peculiarly within the knowledge of the defendants and call for something which is not in the complainant's power to set out in his bill. Ringold v. Goyer Co., 164 Miss. 261, 271, 144 So. 706 (1932). Cf. Palmetto Fire Insurance Company v. Allen, 141 Miss. 681, 105 So. 483, 769 (1925). If complainants were required to make an inadequate, extensively laborious and expensive search in the records of several seaports to ascertain what it could concerning defendants' shipments, the vigor and purpose of the right to obtain a discovery and answer to interrogatories in equity would be emasculated. Southern Railway Company v. Buckeye Cotton Oil Company, 126 Miss. 562, 575, 89 So. 228 (1921). The chancellor was in error in overruling appellant's motion for a decree pro confesso or in the alternative to require defendants to answer under oath the interrogatories. The order overruling that motion is reversed, the motion is sustained, and the case is remanded to the chancery court for further proceedings consistent with this opinion.

Reversed on direct appeal, judgment rendered sustaining appellant's motion, and cause remanded; on cross-appeal, affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.

## ON SUGGESTION OF ERROR

Gillespie, J.

 The issue decided in this case, as stated in the opinion in 90 So. 2d 379, 380, was "whether the chancery court erred in refusing to require defendants to answer interrogatories in the bill of complaint." We do not consider or decide whether the assessment sought by appellant to be made against appellees under Article 8 of the Articles of Association may later be determined to be liquidated damages or a fine or penalty. That is an issue which will have to be developed in the trial, under the established principles relevant to that question and the facts reflected in the evidence. 25 C.J.S., Damages, Sec. 102; 15 Am. Jur., Damages, Sec. 242, et seq.

In the first case involving this provision, on appeal from the circuit court, Wood Naval Stores Export Association v. Latimer, 71 So. 2d 425, 431, it was pointed out that appellees offered no proof "to show that the amount of the 'fine' .... was unjust or oppressive, or that the amount claimed was disproportionate to the damages resulting from the appellees' breach of the covenants of the agreement." Hence it was said that, since the amount of damages to the association were "both uncertain and difficult of estimation," the sum stipulated in Article 8 should be considered as liquidated damages. Whether the evidence on the trial in the present case will again warrant that conclusion is an issue to be determined on the hearing. Our decision does not preclude appellees from contesting the validity of the assessment sought to be imposed under Article 8. But it does require appellees to answer the interrogatories.

Suggestion of error overruled.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.