GRIFFIN, Justice,
for the Court:
This case, involving Mississippi’s medical education loan program, comes to the Court from the Circuit Court of Marion County, which granted the loan’s recipient, Dr. Charles P. Johnson, summary judgment. We reverse.
On July 29, 1975, the Board of Trustees of State Institutions of Higher Learning entered into a contract with Johnson, agreeing to lend him $24,000 for expenses, while a student at the Kansas City College of Osteopathic Medicine. The contract required Johnson to practice for five years in a community of 7,500 population, since changed to 10,000 population, or less. It also provided that Johnson was to repay the loan at six percent interest, and upon breach of its terms, to pay an additional $5,000 “per year for each year remaining to be served” for liquidated damages.
On the same date, Johnson also signed a document entitled “Rules and Regulations Governing State Medical and Dental Education Loan Program as Administered by the Board of Trustees.” This required Johnson to pursue post-graduate training in family practice, internal medicine, or pediatrics. Both parties acknowledge that the two instruments should be construed jointly.
Upon graduation, in 1979, Johnson completed his internship at Doctor’s Hospital in Tucker, Georgia. Thereafter, he entered a residency in obstetrics and gynecology at Erlanger Medical Center in Chattanooga, Tennessee, finishing in June, 1983. The following month, Johnson opened a practice in Columbia, Mississippi, specializing in obstetrics and gynecology.
On July 22, 1983, the Board of Trustees found Johnson in breach of contract, effective July 1, 1980, when he failed to pursue post-graduate training in family practice, internal medicine, or pediatrics. It seeks $24,000 in unpaid principal, $25,000 in liquidated damages, and $9,187.50 in interest, for a total of $58,187.50, from Johnson.
In its order sustaining Johnson’s motion for summary judgment, the circuit court found that, although Johnson was in breach, he had substantially performed the contract beginning his practice of obstetrics and gynecology in Columbia. Significantly, the Board of Trustees had then just added obstetrics and gynecology as a recognized specialty in new contracts let under the medical education loan program. This resulted from the Board’s recognition that small communities needed specialists in obstetrics and gynecology, as well. Yet, we must remember that the Board’s action was prospective only, affecting those just entering the program.
In Jackson v. Caffey, 223 Miss. 368, 371, 78 So.2d 361, 362 (1955), this Court stated, “[Substantial performance is not literal, full or exact performance in every slight or unimportant detail but performance of all important particulars....” See also, Bevis Construction Co. v. Kittrell, 243 Miss. 549, 558-59,139 So.2d 375, 379 (1962). Clearly, the Board did not receive such performance when it contracted for a doctor specializing in the fields of family practice, internal medicine or pediatrics, despite its inclusion of obstetrics and gynecology eight years later.
Moreover, this Court requires the breaching party to act in good faith, displaying no willful omission, in order for him to invoke the doctrine of substantial performance. Hardin v. Beaman, 49 So.2d 732, 733 (Miss.1951); Standard Millwork and Supply Co. v. Miss. Steel & Iron Co., 205 Miss. 96, 110, 38 So.2d 448, 450 (1949). Here, the circuit court found “a failure of candidness with the Board by the Doctor about his studies.... ” This quote refers to a series of letters, appearing in the record, which indicate that Johnson, at the time he entered his residency in obstetrics and gynecology, had received at least three requests for information concerning his area of specialization. Finally responding, when *889 threatened with non-compliance by the Board, Johnson stated that he had entered a primary care residency, “under the terms of my contract.” Obviously, Johnson misled the Board with respect to his field of study. For this reason, substantial performance is likewise inapplicable.
In turn, Johnson argues that the regulations governing the loans were arbitrary, and failed to accomplish the purpose and intent of the legislature, stated in Miss. Code Ann. § 37-109-27 (1972):
It is the purpose and intent of this chapter to meet the need now existing for the shortage of doctors in the State of Mississippi by increasing the number of medical students in the University of Mississippi School of Medicine and Training Hospital and in various medical schools throughout the nation, and by inducing a sufficient number of graduates from medical schools to return to Mississippi and practice their profession, and thus affording adequate medical care to the people of Mississippi. It is, however, the expressed policy of this state and of this chapter that such scholarships or loans are to be considered as a privilege and that there exists no duty or obligation of the state to afford such scholarships or loans for medical education.
In particular, he notes that Miss. Code Ann. §§ 37-109-1 to -27 (Medical Education Loans and Scholarships) do not exclude obstetrics and gynecology from postgraduate training. Therefore, the Board added impermissible limitations in the regulations.
Miss.Code Ann. § 37-109-3 (1972), states, “The board may prescribe such rules and regulations as it deems necessary and proper to carry out the purposes and intent of this chapter.” Consistent with this mandate, Dr. E.E. Thrash, Executive Secretary of the Board of Trustees, testified by deposition that the Board sought “suggestions and guidance” from health care professionals, including the staff at the University Medical Center and Dr. Ver-ner Holmes, formerly a member of the Board. This consultation resulted in the selection of three areas of study, family practice, internal medicine, and pediatrics, which the loan program initially sponsored.
In Mourning v. Family Publication Service, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660-61, 37 L.Ed.2d 318, 330 (1973), the United States Supreme Court stated,
Where the empowering provision of a statute states simply that the agency may “make ... such rules and regulations as may be necessary to carry out the provisions of this Act,” we have held that the validity of a regulation promulgated thereunder will be sustained, so long as it is “reasonably related to the purposes of the enabling legislation.” (citations omitted).
See also, Baske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846, 850-51 (1900). In the present case, the Board’s regulations are “reasonably related” to the statutes, seeking to meet the areas of greatest need first.
In Board of Trustees of State Institutions of Higher Learning v. Wood, 779 F.2d 1106 (5th Cir.1986), the Fifth Circuit, on similar facts, agreed. There, Wood signed an agreement with the Board of Trustees to train in the fields of family practice, internal medicine, or pediatrics, as did Johnson. When Wood then refused to study such post-graduate specialties, choosing instead obstetrics and gynecology, the Fifth Circuit upheld an award of damages for breach of contract, stating,
The statutory provision authorizing the promulgation of rules and regulations by the Board was broad enough to encompass the limitation on residency training. The choice to permit only certain specialization by those returning to community practice serves a central aim of the loan program, i.e. to secure the most needed types of practice. That the choice was committed by the legislature to the agency, not the loan recipient, is obvious.
Id. at 1107. Johnson’s contention, therefore, is without merit.
Secondly, Johnson argues against the imposition of liquidated damages. In Maxey v. Glindmeyer, 379 So.2d 297, 301 (Miss.1980), this Court stated, “Equity will *890 enforce a contract for liquidated damages if such liquidated damages can be found to be reasonable and proper in the light of the circumstances of the case. See also, Dahlstrom Corp. v. State Highway Comm, of the State of Mississippi, 590 F.2d 614, 615 (5th Cir.1979); Patrick Petroleum Corp. of Michigan v. Callon Petroleum Co., 531 F.2d 1312, 1316 (5th Cir.1976). Indeed, parties agree to the payment of liquidated damages where it is difficult to determine actual damages, resulting from a breach. Brown v. Staple Cotton Co-Op. Association, 132 Miss. 859, 892, 96 So. 849, 856-57 (1923); Bright v. Rowland, 4 Miss. (3 How) 398, 413 (1839). Consequently, if such are not a reasonable pre-estimate of damages, but are unreasonable or constitute a penalty, their provision is unenforceable. Wood Naval Stores Export Association v. Latimer, 220 Miss. 652, 668, 71 So.2d 425, 430 (1954); Chicago Investment Co. of Mississippi v. Hardtner, 167 Miss. 375, 386-87, 148 So. 214, 217 (1933); Shields v. Early, 132 Miss. 282, 287, 95 So. 839, 841 (1923). To distinguish then liquidated damages from a penalty, courts must look to the parties’ intentions. Continental Turpentine & Rosin Co. v. Gulf Naval Stores Co., 244 Miss. 465, 485, 142 So.2d 200, 209 (1962); Jones v. Mississippi Farms Co., 116 Miss. 295, 306, 76 So. 880, 884 (1917).
In this case, the loss arising from Johnson’s refusal to engage in family practice, internal medicine, or pediatrics, is difficult to assess; consequently, the parties rightly agreed to include a liquidated damages provision in their contract. Moreover, such damages are reasonable, since their amount varies with the time remaining under the contract, thereby more accurately reflecting the Board’s losses. Indeed, since Johnson agreed not only to repay the loan but also to practice one of the listed specialties, the mere return of principal with interest does not offer the State complete restitution for the loss of his services.
In Wood, 779 F.2d at 1107-08, the Fifth Circuit, faced with the same issue, agreed,
This statutory scheme does not impose a penalty but instead envisions liquidated damages. At the time of execution of the contract, an estimation of the degree of damages flowing to the state as a result of Dr. Wood’s failure to return to Mississippi to practice medicine only in one of the designated specialties would have been difficult to measure or establish. “In Mississippi, where such damages for breach are both ‘uncertain and difficult of estimation,’ such a provision has regularly been construed as one for liquidated damages.” Dahlstrom Corp. v. State Highway Commission, Etc., 590 F.2d 614 (5th Cir.1979) (citing Wood Naval Stores Export Ass’n. v. Latimer, 220 Miss. 652, 71 So.2d 425, 431 (1954); Brown v. Staple Cotton Cooperation Assn, 132 Miss. 859, 96 So. 849, 856 (1923).
The refusal then to award liquidated damages was error.
Interestingly, when the circuit court found Dr. Johnson in violation of the terms of his contract, it awarded attorney’s fees to the Board. The Court rejects this award. Where the contract is silent as to such provision, and there is no finding of willful misconduct sufficient to award punitive damages, it is error to award attorney’s fees. Aetna Casualty and Surety Co. v. Steele, 373 So.2d 797, 801 (Miss.1979).
Finally, the Court, despite its holding, must note Dr. Johnson’s services to the community of Columbia in the field of obstetrics and gynecology, and remind the Board of Trustees that “To err is human, to forgive divine.” [1] However, as noted, the Board has acted according to law.
We reverse the judgment of the circuit court and enter a judgment for the Board of Trustees of State Institutions of Higher Learning in the amount of $58,187.50, less any payments by Johnson under the contract's schedule.
REVERSED AND RENDERED.
*891 WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., not participating.

. Alexander Pope, An Essay on Criticism, Part II, 1. 162 (1711).