666 So.2d 493 (1995)
Donald Leo VARNER, D.V.M.
v.
Barbara Riddell VARNER.
No. 93-CA-00817-SCT.
Supreme Court of Mississippi.
November 30, 1995.
*494 James H. Powell, III, Durant, for appellant.
Peter L. Doran, Wells Moore Simmons & Neeld, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
Dr. Donald Leo Varner appeals a June 22, 1993 decision of the Madison County Chancery Court granting his former wife, Barbara Riddell Varner, relief in the amount of $11,549.64 for past due alimony and child support, attorney fees and other related expenses. He contends that the chancery court erred in finding him in willful contempt of the final judgment, in validating the "penalty provision" of the property settlement agreement, in denying his request for modification of alimony and child support and in awarding Barbara attorney fees. Finding that the trial judge was not in error, we affirm the judgment.

I.
Don and Barbara Varner were married on January 3, 1969. They are the parents of two children, Brad and Fran. The Varners separated on May 6, 1988, and were granted a divorce on June 20, 1990, on the ground of irreconcilable differences. Pursuant to the divorce decree, Barbara has primary custody of the children. Under the terms of the agreement incorporated into the final judgment, Don is required to pay $400.00 per month per child in child support, alimony in the amount of $700.00 per month, all medical expenses not covered by Barbara's insurance policies and all consumer debt accumulated during the marriage.
Barbara works as a secretary at Sunburst Bank and lives with her parents and children in Canton. Don is a veterinarian in Lexington, Mississippi, where he lives with his second wife and her two children. Although *495 they live in a home owned by his wife, Don testified that he is expected to contribute $800.00 per month to his new family's expenses.
For the two years following the divorce, Barbara was in and out of court attempting to collect child support and alimony. Don claimed he was unable to pay. Ultimately, a hearing was held to determine whether he should be held in contempt, whether Barbara should be held in contempt for his cross-claim, and whether the agreement should be modified as Don requested.
Approximately six weeks after the final judgment was entered, Barbara filed the first of a series of motions for contempt against Don for failure to pay child support, periodic alimony and other sums owed. On August 30, 1990, the chancery court found Don in contempt. After a third motion for contempt was filed, Don filed a Motion for Modification of Final Judgment seeking a termination, or in the alternative, a reduction of alimony. The chancellor denied the motion, finding that there had been no material change in circumstances since the judgment for divorce was entered.
After filing five motions of contempt, Barbara filed her sixth and last motion on February 16, 1993. This appeal arises from the judgment on that motion. Don responded by filing a Motion of Contempt against Barbara and another Motion for Modification of the Final Judgment for Divorce. A hearing was held on March 31, 1993. According to the stipulated schedule, Don was $7,845.59 in arrears for alimony and child support from March, 1992 through March, 1993. Although Don argued that he was financially unable to comply, the chancery court found that he had failed to meet the burden of proof necessary to avoid being found in contempt of the agreement.
At the hearing, Don testified that his 1992 gross income was $71,860.00. However, he further stated that his net income was between $30,000.00 and $39,000.00 after he deducted clinic operating expenses. He claimed that he paid $22,239.77 toward child support, alimony, life insurance, and private academy fees for the children in 1992. David Stotts, his accountant, testified that Don's net income was only $21,080.00. Stotts also testified that Don's 1991 net earnings were $11,006.00 from a gross income of $46,411.00. Don's 1990 income tax forms indicated taxable earnings of approximately $45,000.00. Don, however, testified that his earnings have increased since he began working as a sole practitioner.
Don contends that he has had to borrow money from friends and family to meet his child support and alimony obligations. He stated that he had borrowed $5,000.00 from his aunt and $20,000.00 from his parents to meet these obligations as well as to start his own veterinary practice. He further claims that other debt he has incurred impairs his ability to meet his support payments. Don's receptionist and veterinary technician, who admitted that she did not pay the clinic bills, testified that he has been unable to pay her several times, that the electricity at the clinic had turned off once due to nonpayment, that there were payroll tax delinquencies, and that creditors called five or six times a week.
During the period between March, 1992 through March, 1993, Don made numerous representations to Barbara that he would pay the alimony and child support which was due in the "next few days" or at "the end of next week." When the checks were paid, he sometimes would ask her to make the deposit at a certain time and the check would bounce. Also during this time, it was revealed that Don and his wife had taken a trip to Hawaii.

II.
Don first contends that the chancellor erred in finding him in willful contempt of the Final Judgment of Divorce and in ordering his incarceration based on upon his failure to pay child support, alimony and other sums due. There is no question that Don was in contempt of the agreement. He admitted that he did not pay child support or alimony in a timely fashion and not at all some months. He stipulated at the hearing that he was approximately $7,500.00 in arrears. Don contends that the chancellor erred because he is financially unable to *496 meet his obligations to Barbara and the children.
A defendant may avoid a judgment of contempt by establishing that he is without the present ability to discharge his obligations. Gebetsberger v. East, 627 So.2d 823, 826 (Miss. 1993). However, if the contemnor raises inability to pay as a defense, the burden is on him to show this with particularity, not just in general terms. Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss. 1994); Newell v. Hinton, 556 So.2d 1037, 1042 (Miss. 1990). Apparently the judge was not satisfied with Don's evidence of inability to comply:
I would mention to Counsel [Don's counsel] as the Court understands the burden in contempt matters; the burden is upon the Defendant [Don] to show that he has complied with the court Order. But, as we have to rely on the very detailed record of the Plaintiff [Barbara] herein, who has kept and furnished the Court records, ah, it's a wonder this matter is not in worse shape than it is, Mr. Powell [Don's counsel]. But, [sic] burden is always on the one obligated to pay showing the detailed record of payment, not upon the Plaintiff [Barbara] as it was in this particular case today.
The chancellor applied the correct legal standard and found that Don failed to meet his burden of proof. This Court will not reverse a chancellor's finding where it is supported by substantial credible evidence. Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss. 1994). This standard of review holds true for contempt matters, too. "[C]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Morreale, 646 So.2d at 1267; Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990). While a finding of contempt is not proper where the party promptly files for modification, Don did not file independently for modification. The two occasions he filed were in response to Barbara's motions for contempt. Setser v. Piazza, 644 So.2d 1211, 1216 (Miss. 1994). The chancellor had substantial credible evidence to support his opinion. The first part to this assignment of error therefore is without merit.
Although he was never jailed, Don further complains that incarceration is an improper punishment. When found in contempt, the chancellor suspended his sentence to allow Don time to pay Barbara. Furthermore, determination of punishment for contempt falls within the discretion of the chancellor, and this Court will not reverse on appeal absent manifest error or application of an erroneous legal standard. Smith v. Smith, 607 So.2d 122, 126 (Miss. 1992). In sum, the chancellor did not abuse his discretion in holding Don in contempt and subjecting him to the threat of incarceration as motivation to pay alimony and child support.

III.
Paragraph IV B of the settlement agreement provides that "child support and alimony payments are due no later than the first day of each month. If payments are made later than the fifteenth of each month, a ten percent penalty will be added." Don asserts that in contract cases, such penalty provisions are invalid and unenforceable, citing Board of Trustees of Higher Learning v. Johnson, 507 So.2d 887, 889 (Miss. 1987) and Continental Turpentine and Rosin Co. v. Gulf Naval Stores Co., 244 Miss. 465, 142 So.2d 200, 208 (1962). Even liquidated damages provisions are unenforceable if they are not reasonable pre-estimates of damages. Johnson, 507 So.2d at 889. Relying on Shields v. Early, 132 Miss. 282, 95 So. 839 (1923), Don asserts that use of the words "penalty" or "liquidated damages" is prima facie, yet not conclusive, evidence of what the parties meant to say, and that courts favor a penalty construction. With late fees amounting to $150.00 per month, Don claims that he has paid over $5,100.00 in "illegal penalties" over the past two and one-half years and that this amount should be credited toward his arrearage through March 31, 1993.
This Court views divorce decrees as quasi-contracts. See Grier v. Grier, 616 So.2d 337, 340 (Miss. 1993). "[W]here a property settlement agreement is entered into in *497 contemplation of a divorce on the grounds of irreconcilable differences, there is more at work than general contract law." Grier, 616 So.2d at 340. In Grier, we stated:
Although a properly drafted agreement may be binding vis-a-vis the parties, the chancellor may elect, in his discretion, to modify its terms in a divorce decree. Miss. Const. art. IV, § 94. This is sometimes necessary to protect the parties individually and to ensure that the court is not used as a tool for implementing unconscionable contracts which are not fair to either party. Furthermore, all such agreements are subject to the court's approval.
Id. at 340. Although the agreement is quasi-contractual in that it was entered into by both parties and signed as evidence of their consent, it was also approved by the court, and therefore, is a court order. Based on Don's previous conduct, the chancellor's recognition of the provision was understandable in light of Barbara's reliance on the support payments. Accordingly, we refuse to accept Don's view of this agreement. He has an obligation which he has consistently failed to meet; therefore, the chancellor acted appropriately in holding him accountable.

IV.
Don next asserts that the chancellor erred in failing to find a change in circumstances warranting a reduction or termination of his alimony and child support obligations. Support agreements for divorces granted on the ground of irreconcilable differences are subject to modification. Thurman v. Thurman, 559 So.2d 1014, 1017 (Miss. 1990). The modification can occur only if there has been a material change in the circumstances with one or more of the parties. Id.; See also, Gregg v. Montgomery, 587 So.2d 928, 932 (Miss. 1991). The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement. Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss. 1990). In Tingle, we reversed a chancellor's modification of a child support agreement where the husband voluntarily left his job to return to school because the record indicated this reasonably could have been anticipated at the time the decree was entered. Id. at 1393. In Morris v. Morris, 541 So.2d 1040, 1043 (Miss. 1989), we observed that when a reduction in support obligations was sought a mere three months after the decree was entered, the change in circumstances reasonably could have been anticipated.
Don's argument that his child support and alimony obligations should be reduced because he has so many other financial obligations is without legal foundation. Personal bills cannot be used as a factor to reduce support payments. Gregg, 587 So.2d 928, 932 (Miss. 1991). Furthermore, simply alleging, as does Don, that one is subsisting on borrowed funds does not show with the required particularity that he is unable to pay. See Mullen v. Mullen, 246 So.2d 923, 925 (1971).
In this case, the chancellor properly found that there had been no material change in circumstances. Don's income apparently decreased between the time of his divorce and the hearing. However, that decrease was directly related to his decision to open a solo practice and a voluntary move which caused him to give up his supplemental income. Don filed for bankruptcy on July 7, 1993, two weeks after the chancellor denied his request for modification. His bankruptcy petition was dismissed and the case closed on April 18, 1995.
A debtor is prohibited from discharging debt to a former spouse for alimony or support to a child in connection with a separation agreement. See 11 U.S.C. § 523(a)(5). Furthermore, simply filing for bankruptcy does not rise to the level of a substantial change without a finding by the chancellor that the filing was made in good faith. "The law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support." Parker v. Parker, 645 So.2d 1327, 1331 (Miss. 1994) (citing Willis v. Willis, 109 Or. App. 584, 820 P.2d 858 (1991)). "Bad faith has generally been defined as an obligor's action to reduce income or assets for the purpose of jeopardizing the interests of his children." Parker, 645 So.2d at 1331 (citing Nelson v. Nelson, 225 Or. 257, 261, 357 P.2d 536 (1960)).
The bankruptcy discharges should also have no effect on Don's obligation to pay past *498 due support. See Schaffer v. Schaffer, 209 Miss. 220, 46 So.2d 443, 444 (1950) (alimony is not a debt that can be discharged in bankruptcy; it is of a "higher degree than an ordinary contractual obligation"); Tanner v. Roland, 598 So.2d 783, 786 (Miss. 1992) (once child support payments become vested, they cannot be modified or forgiven by the courts); Hailey v. Holden, 457 So.2d 947, 951 (Miss. 1984) (court cannot relieve civil liability for support payments already accrued).

V.
Finally, Don asserts that the chancellor erred in awarding Barbara the attorney fees she sought. In divorce cases, the award of attorney fees is left to the discretion of the chancellor. Doe v. Doe, 644 So.2d 1199, 1208 (Miss. 1994). The standard for an award of attorney fees on a modification motion is much the same as in the original action. Setser v. Piazza, 644 So.2d 1211, 1216 (Miss. 1994); Cumberland v. Cumberland, 564 So.2d 839, 844-45 (Miss. 1990). Attorney fees are not awarded in child support modification cases unless the party requesting fees is financially unable to pay them. Setser, 644 So.2d at 1216. Barbara testified that she was financially unable to pay her attorney. She submitted a financial statement showing her a monthly income of $831.22 with expenses of $2,666.43.
This case also involved contempt proceedings. "When the court denies a spouse's petition for contempt, no award of attorneys fees is warranted." Cumberland, 564 So.2d at 845. Since Barbara was successful on her motion for contempt, it follows she is eligible for an award of attorney fees.
When considering an award of attorney fees, the lower court must take into account a sum sufficient to secure a competent attorney; the relative financial ability of the parties; the skill and standing of the attorney employed; the nature of the case and novelty and difficulty of the questions at issue; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and preclusion of other employment by the attorney due to the acceptance of the case. McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). But for Don's repeated failure to pay, Barbara would not have incurred the expense of bringing multiple contempt actions against her former husband. An itemized account of Barbara's attorney fees was introduced into evidence. She requested $2,270.79, and was awarded $2,000.00. Although the record does not reflect that the chancellor specifically applied the McKee factors to this case, the award appears reasonable. Finding no manifest error, we affirm the award of attorney fees.

CONCLUSIONS
Finding that the chancellor did not err in finding Don Varner in contempt of the final judgment, in validating the "penalty provision" of the property settlement agreement and in denying his request for modification of alimony and child support, we affirm the decision below. Further, because Barbara Varner was successful in her action for contempt, the result of her former husband's continuing failure to meet his support obligations, we affirm the chancellor's award of attorney fees.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.
LEE, P.J., concurs in result only.